Filed 3/26/2014

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CARLOS CANSINO et al., | H038713 |
| Plaintiffs and Appellants, | (Santa Clara County |
| | Super. Ct. No. 1-11-CV-204887) |
| v. | |
| BANK OF AMERICA et al., | |
| Defendants and Respondents. | |

Plaintiffs Carlos and Resurreccion Cansino appeal from a judgment of dismissal sustaining defendant's demurrer to a second amended complaint without leave to amend. Because plaintiffs' complaint fails for lack of specificity, and because the trial court did not abuse its discretion in denying leave to amend the complaint, we will affirm the trial court's judgment.

## I.  FACTUAL BACKGROUND[1]

In 2000, plaintiffs obtained a $280,000 mortgage loan from National City Mortgage Company dba Accubanc Mortgage.  The record does not reveal whether the loan was for the purchase or a refinance of their Milpitas home.  The $280,000 adjustable rate note provided for a five-year fixed interest rate of 8 percent followed by a variable interest rate never to exceed 13 percent.  Plaintiffs refinanced in 2002 with another adjustable rate loan from National City Mortgage Company, borrowing $386,000 against their property.  The 2002 loan fixed interest at 4.875 percent for three years followed by a variable rate not to exceed 10.875 percent.  Plaintiffs again refinanced in August 2005,

---

[1] We draw our facts from the properly pleaded allegations in the second amended complaint and the deeds of trust judicially noticed by the trial court.

borrowing more money against the property ($496,000) using a new lender, America's Wholesale Lender. The loan document stated that the borrower "will pay interest at a yearly rate of 1.000 %," and that "[t]he interest rate I will pay may change." It also stated that minimum monthly payments for the initial five years would result in negative amortization if the minimum payment was insufficient to cover the interest due. The interest rate on the 2005 loan was capped at 9.95 percent.

In approximately July 2005 in connection with the August 2005 loan, a loan broker and an appraiser working for America's Wholesale Lender appraised plaintiffs' home at a fair market value of $620,000. Based on that appraisal and other representations by lending personnel, plaintiffs elected to refinance their home with a $496,000 adjustable rate mortgage. Lending personal told plaintiffs their home would appreciate and they would be able to sell or refinance the home at a later date before having to make higher monthly loan payments or pay an increased principal of $620,000 which would result from negative amortization.

In 2010, plaintiffs discovered that their home was valued between $350,000 and $400,000. Soon thereafter they stopped making payments on the 2005 loan and sought a loan modification. As of the filing of the second amended complaint (March 2012) the monthly payments were approximately $1,960, the balance due on the loan was approximately $626,000, and the fair market value of the home was approximately $350,000.

## II. TRIAL COURT PROCEEDINGS

In October 2011, plaintiffs filed a first amended complaint against Bank of America Corp., CTC Foreclosure Services Corp., and Mortgage Electronic Registration System, Inc. for damages and specific performance arising out of the 2005 refinancing of their Milpitas home. Plaintiffs sued Bank of America in its individual capacity and as the owner of subsidiary and acquired entities including America's Wholesale Lender. The complaint included causes of action for fraud and violation of California's unfair

competition law (UCL) (Bus. & Prof. Code, § 17200). The trial court sustained defendant's demurrer to the first amended complaint with leave to amend on the fraud and UCL claims. The court found the fraud claim deficient for failure to allege each element with specificity and the UCL claim deficient for failure to allege injury. Citing *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808 (*Fox*), the court also ruled that plaintiffs failed to state sufficient facts to justify tolling the three-year statute of limitations for fraud and the four-year statute of limitations for the UCL claim.

Plaintiffs filed a second amended complaint against defendants realleging fraud and UCL violations.[2] In their first cause of action, titled "Negative Fraud, Actual Fraud, and Deceit Vitiating Loan and Deed of Trust As Against All Defendants," plaintiffs alleged that "Defendants' lending personnel" made two false representations to plaintiffs during their 2005 refinancing process: (1) "The current market value of the real property was $620,000 and appreciating;" and (2) "By refinancing with the ARM loan being offered to plaintiffs, plaintiffs could bring the early monthly payments down, obtain several years of appreciation to the value of the home, and sell or refinance the home at an appreciated value before having to pay the then due principal of $620,000 and before having to pay the much higher monthly payments." The second amended complaint further alleged that defendants knew plaintiffs were unaware of the speculative and/or false nature of the two representations, and that the speculative and/or false nature of the representations could not be discovered by plaintiffs' diligent attention.

Plaintiffs alleged that they acted in reasonable reliance on the "presumed truth of the representations," were justified in doing so, and were damaged as a result of that reliance. Plaintiffs alleged that defendant's lending personnel had an affirmative duty to

_____

[2] The second amended complaint alleged a third cause of action labeled "Plaintiff as Third Party Beneficiary Against Defendant Bank of America." The trial court struck this claim as exceeding the scope of permissible amendment. Plaintiffs do not challenge that ruling on appeal.

disclose these matters to plaintiffs, who were unsophisticated borrowers, and that defendants were "charged with knowledge of the speculative nature of the existing and future values of the real property [*sic*] were the direct result of an artificial market created by the financial institutions in creating and marketing the GSEs and Tranches as herein alleged in paragraph 11."[3]  Finally, plaintiffs alleged that the falsity of the two representations "[was] not discovered until sometime in 2010 when plaintiffs realized that their home was now valued at $350,000 to $400,000."  Plaintiffs sought cancellation of the $496,000 note and deed of trust, refinancing of the loan at the current fair market value of the property, and unspecified damages.

In their second cause of action for violation of the UCL against Bank of America only, plaintiffs alleged that the misrepresentations set forth in their fraud cause of action, as well as the terms of the August 2005 loan, constituted unfair, deceptive, false and misleading business practices.  Plaintiffs alleged money damages as a result of defendant's unfair business practices, including "drastically increasing negative equity as a result of defendants' loan package financing" and the difference between the ultimate principal amount of $620,000 and the current $350,000 fair market value of their home.  Plaintiffs further alleged that they discovered their UCL claim within the last four years, with "reasonable diligence of an ordinary borrower of little sophistication . . . ."

Defendants demurred to the second amended complaint arguing that the cause of action for fraud was time-barred, fraud was not pleaded sufficiently or with particularity, and plaintiffs failed to allege actionable misrepresentation.  As to the UCL claim, defendants alleged that it was time-barred, failed for lack of standing, and failed because the underlying fraud violation was inadequately pleaded.

---

[3]  The trial court denied plaintiffs' request for judicial notice of the facts alleged in paragraph 11 of the second amended complaint, and it granted defendants' motion to strike paragraphs 8 through 11 as irrelevant.  On appeal, plaintiffs do not challenge either ruling.  We therefore do not consider the stricken paragraphs in our review.

The trial court sustained defendants' demurrer to the second amended complaint without leave to amend.  The court concluded that plaintiffs failed to allege each element of fraud with the requisite specificity despite having been given the opportunity to amend.  The court also found that the UCL claim was premised on the same alleged misrepresentations as pleaded in the fraud cause of action.  Thus, the UCL claim also failed for lack of specificity.

Plaintiffs filed a timely notice of appeal from the court's order of dismissal entering judgment in favor of defendants.

### III.  DISCUSSION

#### A.  STANDARD OF REVIEW

We review de novo the trial court's order sustaining a demurrer.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  We assume the truth of all facts properly pleaded, and we accept as true all facts that may be implied or reasonably inferred from facts expressly alleged, unless they are contradicted by judicially noticed facts.  (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*); *B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 953.)  Inconsistent general statements are modified and limited by specific factual allegations.  (*B & P Development Corp.* at p. 953.)  We give the complaint a reasonable interpretation and we read it in context.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)  But we do not assume the truth of contentions, deductions or conclusions of fact or law.  (*Evans* at p. 6.)  We will affirm an order sustaining a demurrer on any proper grounds, regardless of the basis for the trial court's decision.  (*Buckland v. Threshold Enterprises, Ltd.* (2007) 155 Cal.App.4th 798, 806, disapproved on another ground in *Kwikset Corp. v Superior Court* (2011) 51 Cal.4th 310, 337.)

When the trial court sustains a demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion.  (*Schifando, supra,* 31 Cal.4th at p. 1081.)  The trial court abuses its discretion

if there is a reasonable possibility that the plaintiff could cure the defect by amendment. (*Ibid*.)  The plaintiff has the burden of proving that amendment would cure the legal defect, and may meet this burden on appeal.  (*Ibid*.; *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

**B.**  **DISMISSAL OF DEFENDANTS CTC FORECLOSURE SERVICES CORPORATION AND MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.**

Defendants CTC Foreclosure Services Corporation (CTC) and Mortgage Electronic Registration System, Inc. (MERS) argue that the demurrer was properly sustained against them because they are not implicated in the second amended complaint. CTC and MERS observe that plaintiffs' complaint is directed at alleged misrepresentations made by the loan originator, America's Wholesale Lender, and that neither CTC nor MERS played a role in the origination of plaintiffs' loan.  We agree with CTC's and MERS's characterization of the second amended complaint, and we note that plaintiffs do not dispute the position of CTC and MERS in their reply brief.  Even though CTC and MERS did not seek dismissal in the trial court based on plaintiffs' failure to state a claim against them, we will uphold the demurrer as to CTC and MERS on that basis.  (*Schifando, supra,* 31 Cal.4th at p. 1081.)

**C.**  **FRAUD**

The elements of fraud are (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages.  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).)  Fraud allegations "involve a serious attack on character" and therefore are pleaded with specificity.  (*Hills Trans. Co. v. Southwest Forest Industries, Inc*. (1968) 266 Cal. App.2d 702, 707.)  General and conclusory allegations are insufficient.  (*Lazar* at p. 645.)  The particularity requirement demands that a plaintiff plead facts which " ' "show how, when, where, to whom, and by what means the representations were tendered." ' "  (*Ibid*.)  Further, when a plaintiff asserts fraud against

a corporation, the plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." (*Tarmann v. State Farm Mut. Auto Ins. Co.* (1991) 2 Cal.App.4th 153, 157.) Less specificity in pleading fraud is required "when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy . . . .' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217.)

### 1. The Future Appreciation Representation

Plaintiffs allege that, prior to their August 2005 loan refinancing, defendants' "lending personnel" represented that plaintiffs' property was appreciating and that plaintiffs could obtain several years of appreciation in their property so that they could sell or refinance before having to make higher monthly payments or pay a future accumulated principal of $620,000.

Defendants argue that the alleged representations regard the future of the real estate market. As such, they are forecasts of future events and not actionable misrepresentations. We agree. The law is well established that actionable misrepresentations must pertain to past or existing material facts. (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 835.) Statements or predictions regarding future events are deemed to be mere opinions which are not actionable. (*Neu-Visions Sports, Inc. v. Soren/McAdams/Bartells* (2000) 86 Cal.App.4th 303, 309-310; *Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1423; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 744, pp. 1123-1125.)

Plaintiffs contend that whether defendants' representations regarding the future market value of their home constitute fact or opinion is a factual question that is not appropriate for resolution at the demurrer stage of proceedings. We agree with plaintiffs that the actionable nature of some statements may not readily be determined on demurrer. (*Furla v. Jon Douglas Co.* (1998) 65 Cal.App.4th 1069, 1080-1081). But plaintiffs

provide no authority for their position that a prediction about future market conditions constitutes an actionable misrepresentation, and we have found none.

Plaintiffs cite *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 408 (*Bily*), which recognizes that in certain circumstances a representation made by someone possessing superior knowledge or expertise may be regarded as fact. *Bily* involved a fraud claim rooted in an opinion paragraph in an accounting firm's audit report. The paragraph read: "[T]he CPA firm's opinion that the audited financial statements, taken as a whole, are in conformity with GAAP [the accounting profession's generally accepted accounting principles] and present fairly in all material respects the financial position, results of operations, and changes in financial position of the client in the relevant periods." (*Id.* at pp. 381-382.) The court in *Bily* found that the paragraph referred to a business's financial statements during a discrete period covered by the audit; it was making no prediction of the business's future performance. In contrast, defendants' alleged statements predicting future appreciation of plaintiffs' property and plaintiffs' ability to sell or refinance the home are statements regarding future events, readily distinguishable from those in *Bily*, and not actionable in fraud.

In *Finch v. McKee* (1936) 18 Cal.App.2d 90, an appeal from a dismissal entered upon a demurrer, the court rejected as inactionable a vendor's statements that a building was constructed "earthquake proof." *Finch*'s reasoning is applicable here: "Every person of common understanding knows it is impossible to estimate the destructive forces of nature accompanying earthquakes, tornadoes, cyclones, storms or floods. No human being could have prophesied the serious damages which resulted to first-class buildings in San Francisco, Santa Rosa and San Jose from the earthquake of 1906. . . . Such statements were pure speculations upon which no purchaser had a right to rely." (*Id.* at p. 94.)

Like acts of nature and their consequences, the future state of a financial market is unknown. Any future market forecast must be regarded not as fact but as prediction or

speculation.  (*Gentry v. eBay*, *Inc.*, *supra*, 99 Cal.App.4th at p. 835 (describing vague, highly speculative statement on demurrer as "not the sort of statement that a consumer would interpret as factual or upon which he or she could reasonably rely."].)  As a matter of law, defendants' alleged representations-that plaintiffs' property would continue to appreciate in the future and that plaintiffs could then sell or refinance their home based on this forecasted future appreciation-are not actionable in fraud.

### 2.   The Fair Market Appraisal Representations

Plaintiffs allege that a loan broker and an appraiser working for American's Wholesale Lender appraised their residence in July 2005 to have a fair market value of $620,000, and that defendants' lending personnel represented to plaintiffs that the market value of the real property at that time was $620,000.  These allegations are deficient under *Lazar* because they do not specify " ' "how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]"  (*Lazar*, *supra*, 12 Cal.4th at p. 645.)  Plaintiffs' fraud allegations do not identify who prepared the appraisal or made the representations.  Absent such allegations, defendant Bank of America has no real way to dispute the fraud claim.

Plaintiffs argue that they should be relieved of specifying the identity of the individuals making the representations because "as the borrowers, [plaintiffs] are always identified by their names in all relevant documents, however, those same documents indicate that [plaintiffs] were involved in transactions with corporations, institutions, and entities, but not with any particular individual acting on behalf of these entities."  Based on the facts alleged in the second amended complaint, the relevant document would appear to be the appraisal; plaintiffs could have but did not provide the trial court with this document, or with any documents supporting the alleged misrepresentations of the value of the home in July 2005.  (C.f. *West v. JPMorgan Chase, N.A.* (2013) 214 Cal.App.4th 780, 793 [attaching relevant written document to complaint]; *Boschma v. Home Loan Center, Inc.* (2011) 198 Cal.App.4th 230, 248 (*Boschma*) [same].)  Further,

to the extent any misrepresentation was verbal, the complaint fails to demonstrate why defendants would "necessarily possess full information" regarding their employees' conversations with plaintiffs. (*Committee on Children's Television, Inc. v General Foods Corp.*, *supra*, 35 Cal.3d at p. 217.)

The second amended complaint also fails to allege how the July 2005 appraisal was a misrepresentation of the current market value of the property. Plaintiffs allege that the home was valued between $350,000 and $400,000 in 2010, but that allegation does not support plaintiffs' claim that the 2005 appraisal was a misrepresentation. (C.f. *Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959 [alleging fraudulent appraisal based on using outdated home sales that were not comparable in value, square footage, number of rooms and other amenities].) Nor is the knowledge element of fraud satisfied by the complaint's conclusory statement that defendants "knew that the . . . [r]epresentation[] [was] either false or at least highly speculative" because the allegation does not identify how defendants knew that the 2005 appraisal misrepresented the market value of the property at the time the property was appraised.

Finally, the allegations in the second amendment complaint fail to state a claim for fraudulent concealment, since the requirement that "[f]raud must be pleaded with specificity" applies equally to a cause of action for fraud and deceit based on concealment. (*Boschma*, *supra*, 198 Cal.App.4th at p. 248.)

### 3. Statute of Limitations

The statute of limitations for fraud is three years. (Code Civ. Proc., § 338, subd. (d).) Although a cause of action generally accrues, triggering the statute of limitations, when it " 'is complete with all of its elements,' " accrual is postponed until a plaintiff discovers, or has reason to discover, the cause of action. (*Fox*, *supra*, 35 Cal.4th at p. 806.) The discovery rule is applied to fraud actions by statute. (Code Civ. Proc., § 338, subd. (d). ["The cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."].)

Because the discovery rule operates as an exception to the statute of limitations, "if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint." (*Hobart v. Hobart Estate Co*. (1945) 26 Cal.2d 412, 437 (*Hobart*).) To excuse failure to discover the fraud within three years after its commission, a plaintiff also must plead "facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry." (*Ibid*.; *Johnson v. Ehrgott* (1934) 1 Cal.2d 136, 137.) To that end, a plaintiff must allege facts showing "the time and surrounding circumstances of the discovery and what the discovery was." (*Hobart* at p. 441.) Conclusory allegations will not withstand a demurrer. (*Fox*, *supra*, 35 Cal.4th at p. 808.) The discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner. (*Davis v. Rite-Lite Sales Co*. (1937) 8 Cal.2d 675, 681.)

Like the first amended complaint, the second amended complaint is deficient for the additional reason that plaintiffs failed to establish the timeliness of the fraud claim. (*Fuller v. First Franklin Financial Corp*., *supra*, 216 Cal.App.4th at p. 962.) Plaintiffs alleged that the misrepresentations on which their fraud claim was based occurred in July 2005. They filed their initial complaint six years later, in July 2011. The second amended complaint alleged that "[t]he falsity of the [two] Representations [was] not discovered until sometime in 2010 when plaintiffs realized that their home was now valued at $350,000 to $400,000," and that the falsity of the two representations "could [not] . . . be discovered by the diligent attention of plaintiffs."

These allegations are insufficient to establish the timeliness of plaintiffs' fraud claim. As we have already explained, plaintiffs' realization that their home, in 2010, was worth $350,000 to $400,000" does not explain how plaintiffs made the discovery or how it demonstrates that the 2005 appraisal was a misrepresentation. "[S]ometime in 2010"

also is vague. Without knowing the specifics of plaintiffs' discovery, the trial court could not determine when plaintiffs had actual or presumptive knowledge of the alleged misrepresentations and whether plaintiffs should have made the discovery sooner.

On appeal, plaintiffs argue that "discovery of the falsity of [defendants'] statements could not readily be identified until a significant amount of time had passed." They also argue that they had "no reason to question the value of their home until the time came to make a decision regarding refinancing." In the same vein, they contend that defendants concealed the fraud which "could not be discovered until after the statute of limitations had run." These conclusory arguments miss the point. The basis of the discovery must be pleaded with specificity, and the second amended complaint falls short of this pleading requirement.

## D. THE UCL CLAIM

California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.) " ' "Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent. 'In other words, a practice is prohibited as "unfair" or "deceptive" even if not "unlawful" and vice versa.' " ' " (*Puentes v. Wells Fargo Home Mortgage, Inc*. (2008) 160 Cal.App.4th 638, 644.) A claim made under section 17200 " 'is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct. [Citation.] Thus, California courts have consistently interpreted the language of section 17200 broadly.' " (*South Bay Chevrolet v. General Motors Acceptance Corp*. (1999) 72 Cal.App.4th 861, 877.)

Plaintiffs' second amended complaint alleges that Bank of America violated the UCL in three ways. In paragraph 29, they allege that the two misrepresentations constitute an unlawful business practice. We agree with the trial court that this allegation fails to state a claim for relief due to lack of specificity, in the same way plaintiffs' fraud

claim based on the same misrepresentations is deficient. (See *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 178.)

In paragraph 30, plaintiffs allege that "Defendant financial institutions" violated the UCL by "colluding" with others in the housing industry to inflate the value of real estate "to entice plaintiffs and others into 'top loaded' or 'leveraged' homes," and then later refusing to refinance based on the true value of the homes. While we are required to assume the truth of properly pleaded facts at the demurrer stage, we reject the allegation that plaintiffs were "entice[d]" into a "top-loaded" or "leveraged house" by collusion as described in paragraph 30. This allegation is inconsistent with the loan documents judicially noticed by the trial court showing plaintiffs' borrowing history. (*Evans*, *supra*, 38 Cal.4th at p. 20 [rejecting allegation contradicted by judicially noticed facts].) The judicially noticed deeds of trust show that plaintiffs did not borrow $496,000 to purchase their home. Plaintiffs borrowed $280,000 in 2000 to either purchase or refinance their home, and they borrowed an additional $216,000 against the home over the course of two refinances. When plaintiffs refinanced their mortgage in 2005 with America's Wholesale Lender, they were not purchasing but rather were once again refinancing debt and continuing to borrow against the value of their home. Because the judicially noticed loan documents contradict plaintiffs' allegation that they were "entice[d]" to purchase a "top loaded" or "leveraged" home, this allegation cannot form the basis for the UCL claim.

Plaintiffs also allege in paragraph 30 that "Defendant financial institutions" "erroneously misstate on the face of the loan document that borrowers (plaintiffs) will only pay a yearly rate of 1%, and other such similar language." The second amended complaint demonstrates that plaintiffs were aware of the negative amortization terms of the loan,[4] but they accepted these terms in reliance on representations that their home was

---

[4] Plaintiffs' knowledge of negative amortization and its consequences is established through paragraph 16(b), where plaintiffs allege defendants told them in 2005

valued at $620,000 and would continue to appreciate. Plaintiffs argue on appeal that their injury resulted from the negative amortization of their loan combined with the failure of their home to appreciate as represented to them in 2005. They do not allege, however, that such an injury resulted from any misstatements contained on the face of the loan document.

The facts here are notably different from the facts in *Boschma*, *supra*, 198 Cal.App.4th 230, where the court reversed a dismissal after a demurrer to a complaint alleging fraud and UCL violations. In *Boschma*, the plaintiffs alleged within the UCL's four-year statute of limitations that defendant's loan documents failed to adequately and accurately disclose that plaintiffs would suffer negative amortization if they made monthly payments according to the only payment schedule provided to them before the closing of their loans. (*Id*. at p. 234.) In contrast, the allegations indicate that plaintiffs here were aware that their indebtedness would increase through negative amortization, but they wagered their ability to manage that debt on the home's value continuing to increase, as allegedly promised by defendants.

The statute of limitations for a UCL violation is four years. (Bus. & Prof. Code, § 17208.) Plaintiffs failed to plead facts to invoke the discovery rule to establish the timeliness of their claim because they have not alleged when they discovered that they were paying an interest rate other than one percent per annum. (*Hobart*, *supra*, 26 Cal.2d at p. 443.) Like the fraud claim, the UCL claim fails as untimely given the statute of limitations.

Arguing for the first time on appeal that the UCL claim is for unlawful business practices, plaintiffs list a host of state and federal laws which Bank of America allegedly violated. But plaintiffs failed to identify these laws in the second amended complaint,

---

that they could sell or refinance an appreciated home before having to pay what would grow to a $620,000 principal.

and failed to show on appeal how the second amended complaint could be amended to state actionable claims under these statutes.

## E.    LEAVE TO AMEND

Although plaintiffs contend that any deficiencies in the second amended complaint could readily be addressed by the filing of a third amended complaint, they have failed to establish abuse of discretion by the trial court, or otherwise provide this court with any basis to allow amendment.  Plaintiffs have the burden to prove that an amendment would cure any defect (*Schifando*, *supra*, 31 Cal.4th at p. 1081), and they failed to do so.  We therefore find no abuse of discretion in the trial court's refusal to allow plaintiffs to amend again.

## IV.  DISPOSITION

The judgment is affirmed.


_____

Grover, J.



**WE CONCUR:**




_____

Bamattre-Manoukian, Acting P. J.




_____

Márquez, J.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-11-CV-204887 |
|---|---|
| Trial Judge: | Hon. Peter H. Kirwin |
| Counsel for Plaintiffs/Appellants<br>Carlos T. Cansino, Jr. and<br>Resurreccion G. Cansino | Thomas W. Gillen<br>Law Offices of Thomas Gillen |
| Counsel for Defendant/Respondent<br>Bank of America, N.A. | Jan T. Chilton<br>M. Elizabeth Holt<br>Severson & Werson |