Filed 3/30/15  Sato v. Bank of America CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GENRO SATO et al.,<br><br>　　　Plaintiffs and Appellants,<br><br>v.<br><br>BANK OF AMERICA, N.A. et al.,<br><br>　　　Defendants and Respondents. | A138944<br><br>(Alameda County<br>Super. Ct. No. HG11609150)<br><br>ORDER MODIFYING OPINION<br>DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:[1]


1.  On page 5, footnote 3 shall be added immediately following the third full paragraph.  All other footnotes should be renumbered accordingly.  The footnote should read as follows:

    For reasons unclear, MERS appears to have recorded an essentially duplicate assignment to Bank of New York on August 3, 2011, before recording substitution of trustee.

2.  On page 5, the first sentence of the fourth full paragraph shall be modified to read as follows:

---

[1]  Before Humes, P. J., Margulies, J. and Banke, J.

1

The following day, on August 24, Recontrust, acting "as agent for the Beneficiary under the Deed of Trust, recorded a Notice of Default executed two days earlier, on August 22.

3. On page 15, the following text should be added to the end of footnote 7 (newly renumbered fn. 8):

Nor is it problematic on this record that MERS may have attempted a substitution of trustee after one of its assignments to Bank of New York, given Recontrust recorded the notice of default not as the trustee, but as an agent of the beneficiary on the Deed of Trust. (*Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, citing *Rossberg v. Bank of America, N.A., supra*, 219 Cal.App.4th at p. 1496.)

Appellants' petition for rehearing is hereby denied.
There is no change in judgment.

Dated: _____        _____

Humes, P. J.

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| GENRO SATO et al.,<br><br>    Plaintiffs and Appellants,<br>v.<br><br>BANK OF AMERICA, N.A. et al.,<br><br>    Defendants and Respondents. | A138944<br><br>(Alameda County<br>Super. Ct. No. HG11609150) |

Genro Sato and Graciela Tiscareno-Sato ran into financial difficulty and were unable to pay their mortgage.  They claim defendants promised them a permanent, affordable loan modification, reneged, and then unlawfully initiated foreclosure proceedings.  No sale, however, has occurred during the three years since the notice of default was filed.  The trial court sustained demurrers to all but one cause of action, and thereafter granted summary judgment on the remaining claim.  The Satos have appealed, supplying this court with a brief that flagrantly violates the California Rules of Court by failing to provide adequate record citations and/or reasoned analysis in support of their multitude of assertions.  They have manifestly failed to carry their burden on appeal to demonstrate prejudicial error, and we affirm the judgment.

**BACKGROUND**

*Violations of Rules of Court*

The Rules of Court require litigants to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter

1

appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) Thus, stating facts without providing any record cite, or citing to only a document rather than to a page, violates this rule. (See, e.g., *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 166 ["plaintiffs repeatedly cite to 170 pages of their motion to vacate without directing us to specific pages"] (*Evans*); *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 990 ["Sections of the statement of facts in the appellant's opening brief include no record citations at all."].) When a litigant repeatedly provides no page citations to the record, the rule violation is "egregious[]," significantly burdening the opposing party and the court. (*Evans*, *supra*, 134 Cal.App.4th at pp. 166–167.)

In this appeal, the Satos submitted opening and reply briefs totaling 105 pages that fail to provide a *single* page-specific citation. Instead, the briefs provide "citations" such as "see FAC" (referring to the first amended complaint, which contained 102 pages of allegations and over a hundred pages of exhibits) or make statements such as "[f]acts supporting Appellant's claim[s] are from the FAC, the opposition to the subject demurrer, and the opposition to summary judgment"—asking this court to wade through nearly 300 pages without guidance. In short, the Satos' briefing egregiously violates the Rules of Court and provides little help in analyzing the merits of the challenged judgment.

At oral argument, counsel for the Satos, Andrew R. Martin—who signed the appellate briefs and presumably drafted them—attempted to excuse the rule violations by claiming this was his "first appellate case."[1] To say counsel was being less than candid with the court is an understatement—this was an outright mistruth. A quick search, by State Bar number, of the dockets of the First District Court of Appeal, alone, showed 17 matters initiated between April 2009 and October 2014, some completed some still

---

[1] When confronted with the patent record citation deficiencies, counsel stated: "I'd like to apologize for the oversight with the citations . . . . This is my first appellate case. . . . I wasn't aware of the specificity . . . required with a demurrer situation. . . . I understand that now your honor."

active, in which Martin was at least one counsel of record. Thus, he has at least five-plus years of experience with appeals. Moreover, Martin has been on briefs submitted to this court in these other cases which not only suffer from similar defects, they predate the February 2014 opening brief in this case. For instance, the only record citation in the October 2013 opening brief in *Jordon-Mendoza v. JPMorgan Chase Bank N.A.* (A138304, app. pending) is in a footnote on page three, and it is to the entire complaint; nary a page cite is given. Even a "first time" appellate lawyer is expected to read and comply with the Rules of Court. Martin's transgressions, as an experienced appellate lawyer, are inexcusable.[2]

Had the Satos largely complied with the Rules of Court, we could overlook minor shortcomings. However, "it is counsel's duty to point out portions of the record that support the position taken on appeal," and "[t]he appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 (*Del Real*).

Accordingly, "any point raised that lacks citation may, in this court's discretion, be deemed waived" or disregarded. (*Deal Real, supra*, 95 Cal.App.4th at p. 768; see also *Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1267 ["To further complicate review, plaintiffs make numerous factual assertions in their briefs without record citation" but "[w]e are entitled to disregard such unsupported factual assertions."]; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 60 (*Lueras*) [rule applies in demurrer context]; *Hernandez v. Vitamin Shoppe Industries Inc.* (2009) 174 Cal.App.4th 1441, 1453 (*Hernandez*) [" 'an appellate court may disregard any

---

[2] In fact, Division Three of this district recently had this to say of Mr. Martin's briefing: "Preliminarily, it was very difficult to discern from [the] . . . briefing the precise nature of [the] arguments. She asserts there are 'innumerable hotly contested material facts to be addressed,' which she believes should have precluded summary judgment. But she does not identify what those facts are, and this court will not independently search the record for error." (*Vitale v. Central Mortgage Company* (Cal. Ct. App., Sept. 30, 2014, No. A138734) 2014 WL 4826963, at *2.)

3

factual contention not supported by a proper citation to the record' "], italics omitted; *Niles Freeman Equipment v. Joseph* (2008) 161 Cal.App.4th 765, 788 ["No record citation is given for this assertion, therefore we disregard it."].)

Given that not a single factual assertion in the Satos' briefs is supported in a manner that complies with the Rules of Court, we disregard them and base our understanding of the parties' dispute on the portions of the record correctly cited to by defendants. In large part, this has not hampered our review of the merits of the judgment. However, as we discuss, the failure to provide proper record citations in connection with some issues has resulted in waiver of those issues on appeal. Further, Martin is hereby put on notice that the court will consider imposing sanctions should he file any appellate brief in the future in this court bereft of proper citations to the record.

### *The Parties' Dispute*

In 2006, the Satos obtained a $562,500 loan from Lenox Financial Mortgage Corp. (Lenox) to refinance a residential mortgage. The Deed of Trust names Lenox as the lender, LSI as trustee, and Mortgage Electronic Registration Systems, Inc. (MERS) as the beneficiary (acting solely as the nominee of the lender and its successors and assigns). The Deed of Trust put the Satos on notice the note or a partial interest in it, together with the deed, could be assigned without further notice to them as borrowers.

In fall of 2009, the Satos applied to Bank of America (BofA), then acting as their loan servicer, for modification of the loan.

In May 2010, BofA offered the Satos a three-month trial payment plan. As agreed under the plan, the Satos made three reduced loan payments (reduced by half) in June, July, and August of 2010. According to the Satos, BofA made certain representations at this time: BofA would hold off on foreclosure to facilitate modification; the Satos needed to default on their loan before any modification could be made; and, after the three successful trial payments, the Satos could have a permanently modified loan at the half-payment rate.

4

On October 29, 2010, however, BofA wrote a letter to the Satos informing them they did not qualify for a permanent loan modification. BofA stated it was denying a modification because the Satos had not made all payments due under the trial plan. But BofA has, on appeal, conceded the Satos did, in fact, make the payments due.

Early in 2011, BofA offered the Satos another trial modification. This time, however, the payments would be more than the original payments due under the loan because of the significant accrued past due balance. The Satos rejected the proposal.

On August 23, 2011, MERS, as beneficiary, had Recontrust substituted in as trustee in place of LSI. That same day, MERS also assigned all beneficial interest in the Deed of Trust "[t]ogether with the note or notes therein described" to the Bank of New York Mellon, as trustee for the certificate holders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2006-16, Mortgage Pass-Through Certificates, Series 2006-16 (Bank of New York).

The following day, on August 24, Recontrust, acting as agent for MERS, recorded a Notice of Default executed two days earlier, on August 22 (at which time MERS still held all beneficial interest in the Deed of Trust). The notice stated $92,701.80 was past due. It instructed the Satos to contact Bank of New York—care of BofA's foreclosure department. A trustee's sale was scheduled.

Before the scheduled sale, the Satos filed suit on December 20, 2011, against BofA, Recontrust, Bank of New York, Lenox, LSI, MERS, and a variety of Does. BofA, Recontrust, Bank of New York, LSI, and MERS demurred to the Satos's 16-cause-of-action complaint, and the trial court sustained the demurrers without leave to amend as to the second cause of action (injunction/TRO), fifth cause of action (negligent infliction of emotional distress), and fourteenth cause of action (Rosenthal Act). The trial court sustained the demurrers as to the other causes of action with leave to amend, and the Satos duly filed an amended complaint.

The same defendants demurred again. The trial court largely sustained the demurrers without leave to amend and dismissed all causes of action, except a promissory estoppel claim against BofA alleging the bank falsely promised the Satos a permanent loan modification and thereby induced detrimental reliance. BofA answered and subsequently moved for summary judgment.

Just days before the summary judgment hearing—on January 29, 2013—the Satos sought leave to filed a second amended complaint to add claims under the then newly-effective Homeowners Bill of Rights.

The summary judgment hearing went forward on February 4, 2013. The trial court granted summary judgment on the ground there was no evidence raising a triable issue of a clear and unambiguous promise of a loan modification upon which the Satos could rely.

Notice of the summary judgment and demurrer rulings was given on February 11, 2013. Judgment was entered in favor of BofA, Recontrust, Bank of New York, LSI, and MERS on April 15, and notice was given on April 17. On April 18, the trial court denied the Satos leave to file a second amended complaint on the grounds the court had entered judgment and lacked jurisdiction to allow further pleadings. The Satos filed a notice of appeal on June 14, 2013.

## DISCUSSION

### *Demurrer*

We review an order sustaining a demurrer de novo. (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751.) We "assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law." (*Ibid.*) "We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory." (*Ibid.*) It is appellants' burden to show how the facts meet every element of a cause of

6

action and to "overcome all legal grounds on which the trial court sustained the demurrer." (*Id.* at p. 752.)

Judicially noticeable facts may undermine a pleading or render it defective. (*Scott v. JPMorgan Chase Bank, N.A., supra*, 214 Cal.App.4th at pp. 751–752 [contradicted allegations in pleading may be disregarded].) Similarly, we do not ignore party admissions that contradict allegations in a pleading. (*Physicians Committee for Responsible Medicine v. KFC Corp.* (2014) 224 Cal.App.4th 166, 181 (*Physicians Committee*) [when "PCRM admitted before trial that it did not have a credible factual belief to support its allegation . . . [t]he trial court was not required to ignore that admission as it determined whether to sustain the demurrers and whether to grant leave to amend . . . , and we will not ignore it on appeal]; cf. *Curtis v. 20th Century-Fox Film Corp.* (1956) 140 Cal.App.2d 461, 464–465 (*Curtis*) [where two claims were based on the same factual allegations, the plaintiff was not prejudiced by erroneous ruling sustaining a demurrer to one, when the second claim was resolved against the plaintiff after trial]; see generally 4 Witkin, Cal. Proc. 5th (2008) Plead, § 397, p. 535 [noting when false allegations of fact may be disregarded].)

### Breach of Contract and Breach of Implied Covenant

As to the breach of contract claim (third cause of action, against BofA), the Satos alleged the bank promised a permanent loan modification if they completed the three-month trial payment plan in the summer of 2010. The bank allegedly breached this promise when it denied a permanent modification by letter dated October 29, 2010.

Defendants took the deposition of Graciela Tiscareno-Sato on September 18, 2012. It is Ms. Sato, not Mr. Sato, to whom the alleged oral misrepresentations were made concerning a loan modification. Ms. Sato recounted a May 20, 2010, interaction with a woman named Amy, the individual at BofA who helped secure the three-month trial payment plan. When asked whether Amy "represent[ed] to you that you would receive the trial modification, or later that you would receive a permanent loan

7

modification," Ms. Sato responded Amy "made it clear that the modification that was permanent would always be based on how we would do in a trial. She made that clear." Ms. Sato further confirmed no permanent loan terms (rate or principal balance) were promised—these would be discussed "*after* the trial modification." (Italics added.) Further, in notes reflecting her conversation with Amy, Ms. Sato wrote that after the three-month trial, "we reevaluate . . . to *attempt to qualify*" for a permanent modification based on new income or "investor" decision.

In light of these admissions by Ms. Sato, which the Satos do not explain or address, there was no prejudicial error by the trial court in sustaining the demurrer on the breach of contract claim. BofA never promised a permanent modification or even specified the terms of such a modification.[3] (See *Physicians Committee*, *supra*, 224 Cal.App.4th at p. 181; *Curtis*, *supra*, 140 Cal.App.2d at pp. 464–465; see also *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 483 ["Unless an agreement to restructure a loan embodies definite terms, capable of enforcement, it is not a legally valid contract."].) The Satos' reliance on BofA's reference to a possible "affordable" loan, which they contend meant a loan with a debt to income ratio less than 36 percent, does not spell out any specific loan terms. Indeed, no reasonable person could believe a federally regulated national bank could or would convey loan terms to an applicant by use of the lone term "affordable."

The Satos' claim for breach of the implied covenant of fair dealing (seventh cause of action) is necessarily premised on the existence of an enforceable contract. Since they failed to state a claim for breach of contract, they also failed to state a claim for breach of the implied covenant. (*Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49 [contract giving rise to covenant a "prerequisite" to an implied

---

[3] That BofA incorrectly stated in its letter that a permanent modification was denied because the Satos failed to make the modified payments is troubling. But absent an enforceable promise by the bank, there is no breach of *contract*.

8

covenant cause of action]; see also *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 712 ["The covenant does not exist independently of the underlying contract."].)  Accordingly, there was no prejudicial error as to the dismissal of the contract-based claims.

### *Fraud and Deceit*

The Satos' eighth, ninth, tenth, and eleventh causes of action all assert varieties of fraud or deceit.  (2 CT 340-357.)  "The elements of fraud are (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance on the misrepresentation, (4) justifiable reliance on the misrepresentation, and (5) resulting damages.  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 . . . .)"  (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469 (*Cansino*).)  All elements of fraud must be pleaded with particularity, meaning a plaintiff must "plead facts which ' " 'show how, when, where, to whom, and by what means the representations were tendered.' " ' "  (*Ibid.*; *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 234 ["every element" must be pleaded].)  "Further, when a plaintiff asserts fraud against a corporation, the plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' (*Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157 . . . .)"  (*Cansino*, *supra*, 224 Cal.App.4th at p. 1469.)

While less specificity is required "when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 217), a defendant's "knowledge about their own communications" does not "relieve[] [a plaintiff] of [the] obligation to provide any factual averments at all" (*Goldrich v. Natural Y Surgical Specialties, Inc.* (1994) 25 Cal.App.4th 772, 783 (*Goldrich*).)  A plaintiff must still allege "the facts constituting every element of the fraud . . . , and [a] claim cannot be salvaged by references to the

9

general policy favoring the liberal construction of pleadings." (*Id.* at p. 782, italics omitted.) "Even in a case involving numerous oft-repeated misrepresentations, the plaintiff must, at a minimum, set out a representative selection of the alleged misrepresentations sufficient to permit the trial court to ascertain whether the statements were material and otherwise actionable," providing information about "what was said or by whom" and "in what manner." (*Id.* at. p. 783.)

Thus, while a plaintiff charging a bank with fraud might be excused for not knowing and pleading the name of a bank employee who drafted a letter or who participated on a particular teleconference (those names might well be known to the bank), the plaintiff must still specify the letter or give the date and time of the teleconference, and specify the statements at issue. (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 794 (*West*).)

The Satos generically alleged "defendants" made several misrepresentations between 2009 and the filing of their pleading: loan modifications "would be able to be made" if the Satos submitted certain documentation; the Satos would have to work with BofA to obtain a loan modification; a strategic default on loan payments was necessary for a modification; and there would be no trustee's sale until the loan modification review process was complete. The Satos also alleged defendants concealed material facts about the Satos' loan and the modification process. However, the Satos identified none of the alleged misrepresentations or concealments with specificity—even if we were to overlook the lack of names of those making the alleged statements or omissions, there were no allegations as to when or how any claimed misrepresentations were made.

As a result, the Satos not only failed to adequately allege the claimed acts of fraud, they also failed to adequately allege reliance and resulting damages. (See *West*, *supra*, 214 Cal.App.4th at p. 794; *Goldrich*, *supra*, 25 Cal.App.4th at p. 783; see also *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1500 [conclusory allegations of harm from being dissuaded from replacement loan or selling house does not satisfy fraud

10

elements of reliance and damages].) Accordingly, the fraud based causes of action were also properly dismissed.

***Negligence and Negligent Infliction of Emotional Distress***

As an initial matter, the trial court correctly dismissed the Satos' separate cause of action for negligent infliction of emotional distress (fifth cause of action) because there is no such independent cause of action. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984 ["there is no independent tort of negligent infliction of emotional distress"].) Rather, a plaintiff may seek emotional distress damages *in connection with* a negligence claim. (See *Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1520.) Accordingly, we consider the purported negligent infliction claim in tandem with the Satos' negligence claim (thirteenth cause of action).

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." (*Lueras*, *supra*, 221 Cal.App.4th at p. 62.) A bank has no "common law duty of care to offer, consider, or approve a loan modification, or to offer . . . alternatives to foreclosure." (*Id.* at p. 68; see also *Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 206 ["No fiduciary duty exists between a borrower and lender in an arm's length transaction."] (*Ragland*).)

Since the Satos do not cite to any specific allegations in the amended complaint related to negligence, we consider any contentions related to negligence to be waived. (See *Hernandez*, *supra*, 174 Cal.App.4th at p. 1453 [lack of specific citations to record waives claim].) Defendants also do not provide any relevant record citations, nor was it their burden to do so. Rather, simply argue—correctly—no duty was owed to the Satos. (*Ragland*, *supra*, 209 Cal.App.4th at p. 206.)

Banks are, however, subject to claims premised on negligent misrepresentations. (*Lueras, supra,* 221 Cal.App.4th at pp. 68–69 ["misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale"

11

could state a claim]; see *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 947; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 898, 906 ["where specific representations were made by a Chase representative as to the likelihood of a loan modification" summary judgment in favor of Chase was in error].)

Nevertheless, to the extent the Satos' negligence claim was premised on alleged "negligent misrepresentations" made during the course of the loan modification process, the claim was still defective. Negligent misrepresentation is a species of fraud or deceit. Given that, such a claim must be pleaded with heightened specificity. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184 [shareholder's action for negligent misrepresentation must be pleaded with particularity]; *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 231 [both negligent and intentional misrepresentation claims require particularized pleading].) As discussed in connection with their fraud and deceit claims, the Satos failed to plead the elements of such a claim with the requisite specificity. Accordingly, the negligence-based claims were also properly dismissed.

### Declaratory Relief and Cancellation of Instruments

The Satos' declaratory relief claim (first cause of action, against all defendants) asked the trial court to stop the foreclosure process because the Satos believed defendants "probably lack standing" to foreclose under California's nonjudicial foreclosure statutes.[4]

A defaulting borrower, however, has no right, on a mere hope or hunch, to test in court whether an entity conducting a nonjudicial foreclosure in fact has authority to foreclose. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*) ["Nothing in the statutory provisions establishing the nonjudicial foreclosure

---

[4] Code of Civil Procedure section 1060 authorizes a declaratory action by "[a]ny person . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property" when there is an "actual controversy relating to the legal rights and duties of the respective parties."

process suggests that such a judicial proceeding is permitted or contemplated."]; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513 (*Jenkins*) [allowing a "preemptive" action "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature"].)

When loan and default are conceded, such hypothetical disputes between those transferring or securitizing the loan do not create an actual controversy between the owing borrower and the foreclosing entity.  Thus, a borrower cannot halt the nonjudicial foreclosure process with boilerplate allegations and condemnatory rhetoric about the evils of the banks' creation of securitized loan investment vehicles and thereby put the burden on the foreclosing entity to establish in court its right to proceed with a nonjudicial foreclosure.  (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 512, 515.)  A "preemptive" cause of action " 'would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.' " (*Id.* at p. 513, quoting *Gomes*, *supra*, 192 Cal.App.4th at p. 1155.)  Indeed, as was highlighted at oral argument, the Satos have been able to stay in their home for over three years, without payment on their mortgage, during the pendency of this preemptive lawsuit.[5]

Both the Satos and defendants appear to agree a borrower may pursue preemptive declaratory relief if the borrower can "identif[y] a specific factual basis for alleging that the foreclosure was not initiated by the correct party." (*Gomes*, *supra*, 192 Cal.App.4th at p. 1156 [distinguishing three federal trial court cases and finding borrower's suit speculative], italics omitted; but see *Jenkins*, *supra*, 216 Cal.App.4th at pp. 512–513 [indicating preemptive wrongful foreclosure cases are categorically banned and, thus, suggesting doubt as to whether there is any viable "*Gomes* exception"].)

---

[5]  That a "preemptive" action is not proper does not preclude a postsale claim for wrongful foreclosure based on "misconduct with regards to the initiation and processing of the nonjudicial foreclosure." (*Jenkins*, *supra*, 216 Cal.App.4th at p. 512.)

The only case the Satos cite as applying a "*Gomes* exception" is *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1099 (*Glaski*).  To begin with, *Glaski* is distinguishable on its facts, including because it is a *postforeclosure* case in which the defaulting borrower sought to set aside a trustee's sale.  Moreover, in that case, the borrower's loan had been securitized by being placed into a trust formed under New York law, and the appellate court concluded the borrower had standing to challenge an assignment of the note on the basis the defendants failed to assign it before the trust's closing date, creating a defect in the chain of title.  (*Id.* at p. 1096.)  *Glaski* hinged specifically on New York law, which the court read as voiding the assignment.  (*Ibid.*)  This, in contrast, is a preemptive lawsuit.  Further, no comparable California or other state statute has been identified as creating a defect in the chain of title.**[6]**

---

**[6]** *Glaski* has also been seriously criticized not only as being inconsistent with California's developing foreclosure jurisprudence, but also as incorrectly applying New York law.  (See, e.g., *Sandri v. Capital One, N.A.* (Bankr.N.D.Cal. 2013) 501 B.R. 369, 374–375 [explaining how *Glaski* unpersuasively departs from California jurisprudence]; *Rajamin v. Deutsche Bank Nat. Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90 [rejecting *Glaski* as inconsistent with other courts' interpretations of New York statute]; see also *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 (*Siliga*) [borrower has no standing to challenge assignment of deed of trust]; *Jenkins*, *supra*, 216 Cal.App.4th 497 [same]; *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 (*Fontenot*) [same].)

Whether a defaulting borrower has "standing" under *Glaski* is presently before the California Supreme Court.  (*Yvanova v. New Century Mortgage Corp.* (Cal. 2014) 176 Cal.Rptr.3d 266 [granting review on following question:  "In an action for wrongful foreclosure on a deed of trust securing a home loan, does the borrower have standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void?"]; see also *Mendoza v. JPMorgan Chase Bank, N.A.* (2014) 228 Cal.App.4th 1020, 1034, review granted (Cal., Nov. 12, 2014, No. S220675) 2014 WL 6463082, at *1 [disagreeing with *Glaski's* standing analysis]; *Keshtgar v. U.S. Bank, N.A.* (2014) 226 Cal.App.4th 1201, 1207, review granted (Cal. 2014) 178 Cal.Rptr.3d 320 [rejecting *Glaski*, as "California cases hold . . . that even in postforeclosure actions a borrower lacks standing to challenge an assignment absent a showing of prejudice"].)

In any case, as defendants pointed out in their respondents' brief, the amended complaint's own allegations are at odds with the Satos' suggestion the Bank of New York, the foreclosing entity, lacked authority to do so. The report of the Satos' mortgage auditor, attached to the amended complaint, states their "loan" was "shown as active in the CHL Mortgage Pass-Through Trust 2006-16," for which the Bank of New York was the trustee. Thus, the trust was certainly acting as though it owned the loan, as was the Bank of New York.

In their reply brief, the Satos offered no rebuttal to their own auditor's admission the loan appeared active in the appropriate trust. Indeed, the Deed of Trust specified the Satos' note could be assigned without notice to them and without recording any evidence of the transfer in the public record, and the most recent evidence of transfer attached to the amended complaint and in the summary judgment record shows assignment of the deed and note to Bank of New York as trustee.[7] (See *Fontenot, supra*, 198 Cal.App.4th at p. 272 ["assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded"]; *Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1506 ["the note could have been assigned to OneWest and Fannie Mae, who then would have had the authority to foreclose, regardless of MERS's assignment of the DOT"].)

All the Satos can suggest in the face of their own mortgage report is that discovery into the endorsements of the note *might* call into question whether the trust actually

In any case, we need not, and do not, weigh in on the *Glaski* "standing" issue since the case is readily distinguishable and, as we discuss, the record shows no defects in authorization.

[7] None of the other irregularities the Satos discussed in their briefing and addressed by defendants offer a sufficient factual basis for questioning Bank of New York's right to foreclose (nor do they undermine the auditor's conclusion regarding the loan showing as in the appropriate trust). For instance, the mere fact there are redundant assignments in the public record does not invalidate each of the duplicates, leaving no assignment.

acquired it. Such speculation is not close to the "specific factual basis" required under *Gomes* to support a preemptive claim based on an alleged defect in the transfer of interests connected with the loan. (*Gomes*, *supra*, 192 Cal.App.4th at p. 1156.) Indeed, if the generic assertion made here were enough, particularly in the face of the record evidence, the *Gomes* "exception" would swallow the rule, and the non-judicial foreclosure process would effectively be transmuted into a judicial one.[8]

For these reasons, the Satos' declaratory relief claim was properly dismissed.

Their related claims for quiet title (sixth cause of action) and cancellation of instruments (sixteenth cause of action) are premised on the same supposed "securitization" issues raised in connection with their insufficient declaratory relief claim. Accordingly, for the reasons we have discussed, these claims were also properly dismissed.

### *Intentional Infliction of Emotional Distress*

The Satos also alleged BofA and Recontrust intentionally inflicted emotional distress (fourth cause of action) by attempting to "steal" their home through the "demand [of] mortgage payments" without right. However, as we have discussed, they have failed to state any preemptive claim for unlawful foreclosure and, as will be discussed, they have failed to demonstrate any error in the grant of summary judgment on their promissory estoppel claim. Accordingly, their conclusory assertion defendants intentionally "stole" their house does not, and cannot, support an intentional infliction claim.

---

[8] We therefore need not, and do not, resolve whether the Satos suffered "prejudice" as a result of any lack of authority of the parties participating in the foreclosure process. (Compare *Siliga, supra*, 219 Cal.App.4th at pp. 79, 85 [concluding, in preemptive foreclosure case, that "[a]bsent any prejudice, the [borrowers] have no standing to complain about any alleged lack of authority or defective assignment"] with *Mena v. JP Morgan Chase Bank, N.A.* (N.D.Cal., Sept. 7, 2012, No. 12–1257 PSG) 2012 U.S.Dist. Lexis 128585 *25 [*threat* of foreclosure by wrong party would constitute prejudice].)

Furthermore, the Satos alleged no specific conduct by either defendant during the ongoing "loan agreement" dispute "that could be considered 'outrageous.' " (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1009.) For instance, "[t]here are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated the [Satos]." (*Ibid.*) Accordingly, the intentional infliction claim was also properly dismissed.

### *Unfair Competition Law*

The fifteenth cause of action, against all defendants, was for violation of California's Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.). The Satos have once again failed to identify or adequately cite to any allegations made in support of their UCL claim. Accordingly, they have waived any issue on appeal in connection with this claim. (*Hernandez, supra*, 174 Cal.App.4th at p. 1453 [lack of specific citations to record waives claim]; see also *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1502 ["the Rossbergs fail to cite any authority to explain what constitutes an unfair business practice or act under the UCL" even though they "bore the burden to show how the alleged facts are sufficient to establish every element of this cause of action"].)

Defendants also cited no relevant record citations. Nor, again, was it their burden to do so. Rather, in their respondents' brief, they simply asserted—correctly—the UCL claim was derivative of other, failed causes of action. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185 ["When a statutory claim fails, a derivative UCL claim also fails."]; *Cansino, supra*, 224 Cal.App.4th at p. 1474 [when fraud claims fail for lack of specificity, UCL claim based on fraud also fails].)

Accordingly, the dismissal of the Satos' UCL claim must stand.

### *Un-Pursued Injunctive Relief and Rosenthal Act Claims*

The Satos have not even attempted to pursue their claims for injunctive relief (second cause of action) and violation of the Rosenthal Act (fourteenth cause of action)

17

on appeal. Accordingly, we deem these claims abandoned and do not examine the merits of their dismissal. (See *Buller v. Sutter Health* (2008) 160 Cal.App.4th 981, 984, fn. 1 ["failure to discuss cause of action on appeal from trial court's order sustaining demurrer constitutes abandonment of that cause of action on appeal"].)

### *Denial of Leave to File Second Amended Complaint*

Having concluded the demurrers were properly sustained or the issues have been waived on appeal, we next consider whether the trial court properly exercised its discretion in denying leave to amend.

The Satos have proposed no further amendments that would cure the defects in their pleadings we have discussed. Accordingly, the trial court's sustaining of the demurrers without leave to amend was not an abuse of discretion. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [burden on the plaintiff to show " 'reasonable possibility' " of amending].)

The trial court also did not abuse its discretion in refusing to allow a second amended complaint alleging violations of Civil Code sections 2924, subdivision (a)(6) and 2924.17, both part of the Homeowners Bill of Rights (HOBR). The HOBR took effect on January 1, 2013, after defendants' allegedly improper conduct of wrongfully recording documents and "initiat[ing]" or "commenc[ing]" foreclosure. Thus, the HOBR does not apply, and leave to amend was properly denied for this reason, alone. (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840 ["retroactive application is impermissible unless there is an express intent of the Legislature to do so"]; *Rockridge Trust v. Wells Fargo, N.A.* (N.D. Cal. 2013) 985 F.Supp.2d 1110, 1152 [applying *Myers* to the HOBR and concluding no retroactivity intended].)[9]

---

[9] We therefore need not, and do not, reach the issue of whether the trial court had "jurisdiction" to allow a new pleading after it had already disposed of all claims by way of the demurrer and summary judgment orders. Although the Satos filed their motion for leave to amend prior to the summary judgment hearing, the trial court did not rule on it until after granting the summary judgment motion.

18

### *Summary Judgment on the Promissory Estoppel Claim*

Although the Satos also purport to challenge the trial court's grant of summary judgment on the promissory estoppel claim against BofA (twelfth cause of action), they have again neither analyzed the elements of such claim nor cited any record evidence supporting any element of such a claim. As a result, they have waived appellate review, and we therefore affirm the summary judgment in favor of the bank. (See *Walker v. Sonora Regional Medical Center* (2012) 202 Cal.App.4th 948, 952, fn. 2 ["The Walkers' appeal does not present any cogent argument or factual basis to challenge the summary judgment ruling in favor of defendant Adventist. We therefore deem any appeal regarding Adventist to be abandoned."]; see also *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 ["Contentions are waived when a party fails to support them with reasoned argument . . . ."]; *Carson v. Mercury Ins. Co.* (2012) 210 Cal.App.4th 409, 430 ["Our scope of review is limited to issues that have been adequately raised and are supported by analysis."], citing *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

#### DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.

_____
                                   Banke, J.


We concur:


_____
Humes, P. J.


_____
Margulies, J.