Filed 1/15/16  Luckett v. Bank of America CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LAWRENCE LUCKETT et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> BANK OF AMERICA, N.A., et al., <br><br> Defendants and Respondents. | D067108 <br><br><br> (Super. Ct. No. 37-2013-00069172-CU-OR-CTL) |

APPEAL from judgments of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Law Offices of Yasmine Djawadian, Yasmine Djawadian.

Wright Finlay & Zak, Gwen H. Ribar and Olivier J. Labarre for Defendant and Respondent Select Portfolio Servicing, Inc.

Reed Smith and Michael E. Gerst for Defendant and Respondent Bank of America, N.A.

Lawrence and Jeanelle Luckett (the Lucketts) appeal following successful demurrers by defendants Bank of America, N.A. (Bank of America) and Select Portfolio Servicing, Inc. (SPS), which were sustained without leave to amend. We conclude that the Lucketts' challenges to the orders sustaining the demurrers lack merit, and that the Lucketts have not met their burden to establish that they could cure their pleading deficiencies by amendment. Accordingly, we affirm the judgments.

I

FACTUAL AND PROCEDURAL BACKGROUND

As alleged in the operative first amended complaint, the Lucketts purchased a home in downtown San Diego in May 2007 (the downtown home), for which they obtained a loan in the amount of $469,220 from Countrywide Home Loans, Inc., secured by a deed of trust. In 2008, the mortgage was transferred to Bank of America.

The Lucketts began having financial difficulties in November 2011, when they incurred unexpected expenses for repairs of their residence in El Cajon and were unable to refinance the El Cajon residence to generate funds for the repairs. At the time, the Lucketts were current on their loan payments for the downtown home.

Because of their financial difficulties, the Lucketts contacted Bank of America in December 2011 to explore a loan modification for the downtown home. Specifically, the Lucketts allege that they walked into a Bank of America branch in Mission Valley "[i]n or about December 2011" and spoke to Bank of America "representative" Victoria Soto. According to the Lucketts, Soto "advised . . . that there are several government programs available for them that would allow them to lower their monthly payments, principal

2

balance, as well as interest rate."   Further, the Lucketts "were told that they would obtain a fair and reasonable review of a loan modification" but were "advised that in order to qualify for a loan modification in the first place, they had to be behind on their mortgage [payments]."

The Lucketts allege that "[i]n or about January of 2012, [they] stopped making their mortgage payments," and they "then worked with [Soto] so as to obtain a loan modification."  According to the Lucketts, they "submitted their financial package in or about February of 2012 that included every document that Bank of America had requested for a loan modification," and they "kept submitting the required documents periodically" as they "were told that they had to continue supplying the requisite financials each month."  Although the Lucketts are not clear about who made the representation or when it was made, they allege that "based on their first submission, they were told that they did qualify under the government HARP program."[1]  According to the Lucketts, when they requested status updates from Soto regarding the loan modification, she told them that "they needed to just keep submitting financials every month."

The Lucketts alleged that "in or about April 1, 2012," they "wished to make mortgage payments because they were worried about not making said payments" but did not do so because "they were informed that no payments would be accepted at that time

---

[1]     The Lucketts do not elaborate on what a modification under that program might have involved.

3

unless they paid their arrears in full first." At this point the Lucketts "were . . . not inclined to pay off the arrears . . . because they were still under the impression that a loan modification would be worked out."

In April 2013, the Lucketts were informed by Soto "that they did not qualify for a loan modification," but allegedly "were not told why they did not qualify." According to the Lucketts, although their "financial situation never changed during the loan modification process," "[a]t no point were they told that they would be denied a loan modification or did not qualify for a loan modification," until their application was denied in April 2013. According to the Lucketts, "Bank of America should have known whether [they] qualified for a loan modification from their initial submission, not fifteen months later when their arrears kept increasing," and Bank of America "acted improperly and wrongfully when [it] did not tell [the Lucketts] that they did not qualify for a loan modification earlier when their arrears were lower."

As alleged by the Lucketts, as a result of failing to pay their mortgage while waiting to be approved for the loan modification they accrued over $50,000 in arrearages on their mortgage, their credit deteriorated and they now "face foreclosure" on the downtown home. The Lucketts allege that "Bank of America never had any intention o[f] modifying [the Lucketts'] loan in the first place but advised them to act in a way to be destined to foreclosure," and "[h]ad [the Lucketts] not relied on [Bank of America], they would have been current on their mortgage."

The Lucketts filed their original complaint against Bank of America in September 2013. The Lucketts allegedly found out in December 2013 that "the servicing of their

4

loan was transferred to SPS." They accordingly filed a first amended complaint in April 2014, which added SPS as a defendant, alleging among other things as to SPS, that it is "a successor of Bank of America, and shall be liable for its actions for that reason."

The first amended complaint alleges four causes of action, each of which is asserted against both Bank of America and SPS, who are referred to collectively as "defendants" throughout the causes of action, without distinguishing between each party's specific involvement.[2] The first cause of action for fraud and deceit alleges that a fraudulent misrepresentation was made when "[d]efendants ensured [the Lucketts] that they will obtain a fair and reasonable review of a loan modification program and would qualify based on the income figures provided" and "when they continued to tell [the Lucketts] to continue submitting financial documentation knowing that they would deny them over a year later." The second cause of action for breach of the implied covenant of good faith and fair dealing alleges that defendants interfered and failed to cooperate in the performance of the mortgage agreement. The third cause of action for promissory

---

[2] The original complaint and the first amended complaint also named ReconTrust Company, N.A. as a defendant, which the Lucketts allege is a wholly owned subsidiary of Bank of America. Other than an initial paragraph in the original and first amended complaints identifying ReconTrust Company, N.A. as a defendant, that entity is not otherwise mentioned in those pleadings. Bank of America's demurrer was also filed on behalf of ReconTrust Company, N.A., and the trial court sustained the demurrer as to both Bank of America and ReconTrust Company, N.A. The Lucketts do not discuss ReconTrust Company, N.A. in their appeal, instead referring only to Bank of America and SPS as the defendants against whom they believe the demurrer should not have been sustained. We accordingly conclude that the Lucketts have waived any appeal of the demurrer as to ReconTrust Company, N.A., and we do not further discuss ReconTrust Company, N.A. in our opinion.

5

estoppel is based on an allegedly "clear and unambiguous promise that [defendants] would work with [the Lucketts] to reduce their monthly mortgage payments" and seeks an order requiring defendants to give the Lucketts a loan modification. The fourth cause of action alleges fraudulent transfer of the servicing of the loan on the downtown home from Bank of America to SPS, which the Lucketts allege was undertaken so that Bank of America could not be ordered by the court to provide the Lucketts with a loan modification. In addition to an order requiring defendants to issue a loan modification, the remedies sought by the Lucketts in the first amended complaint include general and special damages. Further, although the Lucketts do not allege that foreclosure proceedings have been instituted on the downtown home, they seek an injunction against any "proposed foreclosure."

Bank of America and SPS both filed demurrers to the first amended complaint, along with requests that the trial court take judicial notice of the relevant deed of trust. The trial court sustained both demurrers without leave to amend and entered judgment against the Lucketts.

The Lucketts have appealed from the judgment as to both Bank of America and SPS. The Lucketts challenge the order sustaining the demurrer as to the first, third and fourth causes of action, but they do not argue that the demurrer should have been overruled as to the second cause of action alleging breach of the covenant of good faith

and fair dealing.[3]  The Lucketts also contend that they should have been granted leave to amend, including an amendment to allege a cause of action under Business and Professions Code section 17200, although they did not propose that amendment to the trial court.

II

DISCUSSION

A.    *Standard of Review*

" ' "On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." '  [Citation.]  'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' [Citation.]  In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable.' [Citation.]  [¶]  Further, '[i]f the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. . . .  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. . . .  The plaintiff has the burden of proving that an amendment

---

3      Because the Lucketts have not challenged the ruling on the cause of action for breach of the covenant of good faith and fair dealing, we do not consider it.

7

would cure the defect.' [Citation.] '[S]uch a showing can be made for the first time to the reviewing court . . . .' " (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153-1154.)

B.      *The Demurrer to the First Cause of Action for Fraud*

We first examine whether the trial court properly sustained the demurrers as to the first cause of action, which alleged fraud and deceit against Bank of America and SPS. We begin with a discussion of the demurrer as to Bank of America and then consider the demurrer as to SPS.

1.      *Bank of America's Demurrer to the Fraud Cause of Action*

The Lucketts' cause of action for fraud is centered on the following alleged misrepresentations: "Defendants ensured [the Lucketts] that they will [*sic*.] obtain a fair and reasonable review of a loan modification program and would qualify based on the income figures provided. This statement was a misrepresentation because Defendants suggested a fact which was not true and made a false promise without an intention of performing it. [¶] . . . Defendants made further misrepresentations to [the Lucketts] when they continued to tell [the Lucketts] to continue submitting financial documentation knowing that they would deny them over a year later despite the fact that [the Lucketts'] financial situation never changed. [¶] . . . The misrepresentations were material because [the Lucketts] would have paid off their arrears in or about April of 2012, when the arrears were lower but did not because they were under the impression that a loan modification would be worked out." Further, as relevant to the fraud cause of action, the

first amended complaint alleges that someone told the Lucketts "based on their first submission, . . . that they did qualify under the government HARP program."

" 'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 (*Lazar*).)[4] "In California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] 'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " [Citation.] [¶] This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered." ' " (*Id*. at p. 645.) "*Every element* of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically) . . . ." (*Committee on Children's Television, Inc. v. General Foods Corp.*

---

4     To the extent the Lucketts allege that Bank of America promised to approve a loan modification, they are asserting a claim of promissory fraud. "Promissory fraud or false promise ' "is a subspecies of [the action for] fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud. . . ." ' . . . [¶] 'The elements of promissory fraud . . . are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e].' . . . As with any other form of fraud, each element of a promissory fraud claim must be alleged with particularity." (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498, citations omitted (*Rossberg*).)

9

(1983) 35 Cal.3d 197, 216, italics added (*Committee on Children's Television*).) "The pleading of fraud . . . is also the last remaining habitat of the common law notion that a complaint should be sufficiently specific that the court can weed out nonmeritorious actions on the basis of the pleadings. Thus the pleading should be sufficient ' "to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud." ' " (*Id*. at pp. 216-217.)

As relevant here, because Bank of America is a corporate defendant, the Lucketts' burden in asserting a fraud claim is even greater. "In such a case, the plaintiff[s] must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.' " (*Lazar*, *supra*, 12 Cal.4th at p. 645.)

a.      *The Lucketts Do Not Plead the Misrepresentations with Specificity*

In several respects, the Lucketts fail to plead the purported fraudulent representations with particularity.

First, the Lucketts allege that some of the representations they identify were made by Soto, namely that "there are several government programs available for them that would allow them to lower their monthly payments," and that the Lucketts "would obtain a fair and reasonable review of a loan modification." To the extent the Lucketts claim to have relied on these representations as a promise that they would eventually *obtain* a loan modification from Bank of America, they fail to plead with particularity that Soto had the authority to commit Bank of America to granting a loan modification to them. The first amended complaint includes a vague description of Soto's position at Bank of America as

10

a "representative," but includes no allegations regarding Soto's authority to make any binding promises or any facts indicating that it would be reasonable for the Lucketts to rely on Soto's statements as creating a binding promise by Bank of America to eventually provide a loan modification. Therefore, with respect to those statements, the Lucketts fail to satisfy the pleading requirements for alleging a fraud claim against a corporate defendant. (*Lazar*, *supra*, 12 Cal.4th at p. 645 [requiring allegations of the person's " 'authority to speak' "].)

Second, another central allegation in the Lucketts' fraud claim is that someone told them "based on their first submission, . . . that they did qualify under the government HARP program." However, this allegation is not pled with the required specificity because the Lucketts do not identify *who* said it or *when* it was said. (*Lazar*, *supra*, 12 Cal.4th at p. 645 [requiring allegation of " ' "how, when, where, to whom, and by what means the representations were tendered" ' "].) If the Lucketts intend to allege that this representation was made by Soto, the allegation is insufficient for the reasons set forth above concerning the other representations made by Soto.

Finally, the focus of the Lucketts' fraud claim is that they were promised they would eventually obtain a loan modification. However, that claim is not adequately pled because the Lucketts do not allege with specificity the *terms* of what they were promised. Throughout their pleading, the Lucketts generally refer to a "loan modification" and one time refer cryptically to a loan modification under "the government HARP program." However, the Lucketts do not explain what that loan modification would have included and if it would have cured the negative consequences of their decision to default on their

11

mortgage payments on the downtown home. Among other things, the Lucketts fail to specify whether the loan modification was expected to cure the negative impact of their decision to default on their mortgage or if it would address the fact that they had accumulated significant arrearages.[5]

        b.      *The Lucketts Do Not Plead Actionable Damages for Fraud*

The fraud cause of action is also not properly pled because the Lucketts have not identified any actionable damages.

"In order to recover on a claim for fraud, the plaintiff must establish the 'detriment proximately caused' by the defendant's tortious conduct. (Civ. Code, § 3333.) 'Deception without resulting loss is not actionable fraud.' " (*Auerbach v. Great Western Bank* (1999) 74 Cal.App.4th 1172, 1184.) "Under California law, a defrauded party is ordinarily limited to recovering out-of-pocket damages. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240.) The out-of-pocket measure of damages ' "is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received." ' " (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 66.) Further, " '[i]f the existence . . . of damages alleged in a

---

5     Although the Lucketts set forth several proposed amendments to the fraud cause of action, they propose no amendment that would cure their fundamental failure to describe the terms of the loan modification that they were purportedly promised, or to specify who told them that they would qualify under the "HARP" program, or to establish Soto's authority to make representations on behalf of Bank of America concerning whether the Lucketts qualified for a loan modification.

fraud pleading is "too remote, speculative or uncertain," then the pleading cannot state a claim for relief.' " (*Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1064.)  Thus, unless the Lucketts have specifically identified nonspeculative out-of-pocket damages caused by Bank of America's alleged fraud, they do not adequately plead a cause of action for fraud.

Here, the first amended complaint identifies two categories of damages allegedly caused by Bank of America's fraud:  (1) the Lucketts' credit rating has deteriorated due to the fact that they became delinquent on their mortgage payments; and (2) they are "facing foreclosure."  However, neither of these alleged damages constitutes the type of nonspeculative out-of-pocket damages necessary to state a claim for fraud.  First, the purported deterioration of the Lucketts' credit rating does not constitute out-of-pocket damages.  The Lucketts have not identified any way in which their credit rating has caused them to incur any additional expenditures, and any possibility that the Lucketts may face increased financing costs in the future because of their deteriorated credit rating is speculative and contingent.  Second, as to the possibility of a foreclosure on the downtown home, the Lucketts' allegation is too speculative to support a fraud claim.  The Lucketts allege only that they are "facing" a foreclosure, not that they have already suffered any out-of-pocket loss, or even that any specific foreclosure proceedings have taken place.[6]

---

6 The Lucketts contend that they should be given leave to amend the complaint to allege that they have suffered specific out-of-pocket losses in the form of "late fees and penalties" when they defaulted on their loan payments.  Although late fees and penalties might constitute specific out-of-pocket losses, *if actually paid*, the Lucketts have not alleged that they have made any such payments, only that they have become liable for

c. *The Exception for Facts Within the Control of the Defendant Does Not Apply Here*

The Lucketts argue that we should not apply the pleading standards for fraud claims in this case because "it is well-settled that the requirement of specificity is relaxed when the other party contains full information regarding the facts surrounding the underlying allegations." The exception upon which the Lucketts rely provides that "[l]ess specificity is required when 'it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy,' " or " 'the facts lie more in the knowledge of the opposite party.' " (*Committee on Children's Television*, *supra*, 35 Cal.3d at p. 217.)

Based on the nature of the allegations here, that exception does not apply. The representations on which the Lucketts rely were allegedly made by a branch employee of Bank of America on an unspecified date, and apparently were oral, not in writing. Under those circumstances, the Lucketts, rather than Bank of America, should have superior knowledge about the nature of the representations that caused them to take certain actions. (See *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1471 (*Cansino*) ["to the extent any misrepresentation was verbal, the complaint fails to demonstrate why defendants would 'necessarily possess full information' regarding their employees'

_____

those payments *should they* take steps to make loan payments and cure their default. The Lucketts have not stated that they intend to resume payments on their mortgage and pay all the amounts owing. Further, even if *incurring* late fees and penalties without *paying* them were sufficient to allege out-of-pocket losses, the addition of that allegation here would not serve to cure all the deficiencies of the fraud cause of action, as the Lucketts still would not have pleaded the fraudulent representations with particularity.

14

conversations with plaintiffs"]; *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 158 ["we consider this exception inapplicable here, for [defendant] has no more reason to know who made the allegedly false representations to [plaintiff] than [plaintiff]"].)  Further, the exception applies only to specificity in pleading the *content* of the fraudulent representations, and does not excuse a lack of specificity in pleading actionable damages, as the relevant facts for that issue are normally within the control of the plaintiff.  (*Rossberg*, *supra*, 219 Cal.App.4th at p. 1501 [the "exception does not apply to the [plaintiffs'] failure to specifically allege their damages and how their reliance on [defendant's] promises caused those damages"].)[7]

    2.    *SPS's Demurrer to the Fraud Cause of Action*

We next consider SPS's demurrer to the fraud cause of action.   As we have described, all of the representations that form the basis for the fraud cause of action allegedly were made between December 2011 and April 2013, when the Lucketts were in the process of trying to obtain a loan modification from Bank of America.  According to the first amended complaint, SPS did not become involved with the Lucketts until December 2013, when they took over as servicer of the Lucketts' loan.  The Lucketts' theory of liability against SPS in the fraud cause of action is that SPS is a "successor" to

---

[7]    Although the parties also discuss whether the first amended complaint adequately alleges the remaining elements of fraud (i.e., knowledge of falsity, intent to defraud, and justifiable reliance (*Lazar*, *supra*, 12 Cal.4th at p. 638)), because we have concluded that the first amended complaint does not adequately plead the existence of a misrepresentation or actionable damages and cannot be amended to adequately plead those elements, we need not, and do not, discuss whether the remaining elements of fraud are adequately pled.

15

Bank of America and has therefore assumed Bank of America's tort liability. As we will explain, the first amended complaint does not state a fraud claim against SPS.

For one thing, as the fraud allegations against SPS are wholly derivative of the fraud allegations against Bank of America, the Lucketts fail to adequately plead the elements of a fraud claim against SPS for the same reason that they have failed to plead the elements of a fraud claim against Bank of America, as we have described above.

Moreover, even putting aside the insufficient pleading of the fraud allegations, the cause of action against SPS fails for the independent reason that the Lucketts have not adequately alleged successor liability. "As typically formulated," the rule is that "a corporation purchasing the principal assets of another corporation . . . does not assume the seller's liabilities unless (1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28 (*Ray*).) The first amended complaint does not describe a situation that meets any of the requirements for successor liability.

First, the Lucketts do not identify any "express or implied agreement of assumption" by SPS of Bank of America's liabilities. (*Ray*, *supra*, 19 Cal.3d at p. 28.) The Lucketts attempt to satisfy this standard by arguing that SPS took over the servicing of the Lucketts' loan, which was in default, and thus was a "liability" for SPS, not a performing asset. However, the Lucketts' argument misapprehends the relevant inquiry. The issue is whether SPS agreed to assume Bank of America's *liabilities to third parties*,

16

such as the tort liability that the Lucketts are attempting to establish in this action, not whether SPS assumed assets from Bank of America that were "liabilities" in that they were not profitable assets. (See *Ray*, at p. 28 [in a case alleging products liability, focusing on the lack of an "express or implied agreement to assume liability for injury from defective products" manufactured by the predecessor company].)

Second, the Lucketts do not contend that there was a "consolidation or merger" of Bank of America and SPS. (*Ray*, *supra*, 19 Cal.3d at p. 28.)[8] Instead, they simply allege that SPS took over as servicer of their loan on the downtown home.

Third, there is no suggestion that SPS is a "mere continuation" of Bank of America. (*Ray*, *supra*, 19 Cal.3d at p. 28.) More specifically, "a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts . . . only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." (*Ray*, at p. 29.) The Lucketts do not allege that any of those facts exists here.

---

8    The "consolidation or merger" exception "has been invoked where one corporation takes all of another's assets without providing any consideration that could be made available to meet claims of the other's creditors . . . or where the consideration consists wholly of shares of the purchaser's stock which are promptly distributed to the seller's shareholders in conjunction with the seller's liquidation." (*Ray*, *supra*, 19 Cal.3d at p. 28, citation omitted.) No such situation has been alleged here.

Finally, the Lucketts have failed to set forth any coherent theory about how "the transfer of assets to [SPS] [was] for the fraudulent purpose of escaping liability for [Bank of America's] debts." (*Ray*, *supra*, 19 Cal.3d at p. 28.) Bank of America has never attempted to argue that its transfer of the servicing of the Lucketts' loan to SPS absolves Bank of America of any tort liability it may incur to the Lucketts, and there is no suggestion that due to the transfer of the loan servicing Bank of America is now unable to pay any eventual judgment that the Lucketts may obtain.

C.      *The Demurrer to the Third Cause of Action for Promissory Estoppel*

In the third cause of action, the Lucketts allege promissory estoppel against Bank of America and SPS.

1.      *Bank of America's Demurrer to the Promissory Estoppel Cause of Action*

The Lucketts' theory of promissory estoppel against Bank of America is that Bank of America promised to "work with [the Lucketts] to reduce their monthly mortgage payments," and Bank of America breached that promise "by denying [the Lucketts] a loan modification for undisclosed reasons." The remedy that the Lucketts seek for the promissory estoppel cause of action is an order "enforcing [Bank of America's] promise to give [the Lucketts] a loan modification."

"In California, under the doctrine of promissory estoppel, 'A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. . . . Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that

18

consideration must be given in exchange for the promise sought to be enforced.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310, citations omitted.)  The elements of promissory estoppel are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." (*Laks v. Coast Fed. Sav. & Loan Assn.* (1976) 60 Cal.App.3d 885, 890 (*Laks*).)  As we will explain, the first element of promissory estoppel is lacking here.

To give rise to a claim of promissory estoppel, "[t]he promise must . . . be 'clear and unambiguous in its terms.'  [Citation.]  'Estoppel cannot be established from . . . preliminary discussions and negotiations.' " (*Garcia v. World Savings, FSB* (2010) 183 Cal.App.4th 1031, 1044 (*Garcia*).)  In this context, "[t]o be enforceable, a promise need . . . be ' "definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." ' " (*Id*. at p. 1045.)  " '[W]here " 'a supposed "contract" does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, . . . there is no contract.' " ' " (*Aceves v. U.S. Bank, N.A.* (2011) 192 Cal.App.4th 218, 226.)

Further, in the specific context of negotiations over the terms of a loan, case law specifically establishes that preliminary negotiations to enter into a loan contract, without any specific terms of the contract decided upon, does not give rise to a claim for

19

promissory estoppel based on a promise to enter into a loan agreement. Thus, in *Laks*, *supra*, 60 Cal.App.3d 885, the plaintiff's negotiations with a bank over a possible construction loan did not give rise to promissory estoppel when many of the essential terms of the loan were still undecided, including payment schedules, identification of the security, prepayment conditions, terms for interest calculations, loan disbursement procedures, and rights and remedies of the parties in case of default. (*Id.* at p. 891.)

As we have explained, the remedy that the Lucketts seek is an order "enforcing [Bank of America's] promise to give [the Lucketts] a loan modification." However, because the purported promise, as alleged in the first amended complaint, was not clear and unambiguous, it would be impossible for the court to issue an order enforcing any such promise, and thus does not meet the requirement of being " ' "definite enough that a court can determine the scope of the duty . . . and the limits of performance." ' " (*Garcia*, *supra*, 183 Cal.App.4th at p. 1045.) The Lucketts only very generally describe discussions about a "loan modification" under "several government programs," and they once vaguely mention the "government HARP program." However, they fail to plead any specific terms that were supposed to be included in the promised loan modification, and thus the promise, as described, is too vague to be enforced. In short, because the terms of the promised loan modification are not identified in the promissory estoppel cause of action, the Lucketts have not pleaded a promise that is sufficiently clear and

20

unambiguous to give rise to a valid cause of action or to support the remedy that they seek.[9]

       2.       *SPS's Demurrer to the Promissory Estoppel Cause of Action*

As in the fraud cause of action, the Lucketts' only theory of liability against SPS in the promissory estoppel cause of action is that SPS is liable under a theory of successor liability. We therefore conclude that the successor liability allegations fail for the same reasons we have explained in connection with the fraud cause of action, namely, the Lucketts have not identified any factual basis on which to impose successor liability on SPS.

In addition, as SPS's alleged liability in the promissory estoppel cause of action is wholly derivative of the allegations that Bank of America made an enforceable promise, and we have concluded that those allegations are insufficient to satisfy the elements of promissory estoppel, we also conclude that the promissory estoppel cause of action is insufficient as to SPS.

D.     *Demurrer to the Fourth Cause of Action for Fraudulent Transfer*

       1.       *Bank of America's Demurrer to the Fraudulent Transfer Cause of Action*

The fourth cause of action for "fraudulent transfer" alleges that "with the aid of SPS," Bank of America transferred the servicing of the loan to SPS "in order to avoid and

---

[9] The Lucketts set forth proposed amendments to the promissory estoppel cause of action, but those proposed amendments do not set forth the terms of the promised loan modification and thus do not cure the pleading deficiencies in the promissory estoppel allegations.

escape liability."  Specifically, the Lucketts allege the transfer of the servicing of the loan was accomplished with the intent "to hinder, delay, and defraud the remedying of [the Lucketts'] claims."  The Lucketts' theory is that because Bank of America transferred the servicing of the loan to SPS, "Bank of America no longer has any authority or obligation to grant [the Lucketts] a loan modification" as "[t]hat authority . . . lies squarely with SPS."  Put another way, the Lucketts allege that by transferring servicing of the loan to SPS, Bank of America has hindered the Lucketts' ability to obtain effective relief against Bank of America *in the form of an order requiring Bank of America to modify the Lucketts' loan*.

As we understand the Lucketts' fraudulent transfer cause of action, it is based on the Uniform Voidable Transactions Act (UVTA) (Civ. Code, § 3439 et seq.).[10]  Under the UVTA, a "creditor" may bring an action to obtain relief for a fraudulent transfer of an asset by a debtor.  (Civ. Code, § 3439.07, subd. (a).)  The transfer of an asset is fraudulent under the UVTA if it was made "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor[,]" or "[w]ithout receiving a reasonably equivalent

---

[10]    In 2015, the former Uniform Fraudulent Transfer Act was renamed as the Uniform Voidable Transactions Act (Stats. (2015) ch. 44, § 2).  We will refer to the act by its current name (UVTA), although the parties and relevant case law employ the former terminology.

Although the first amended complaint does not specifically cite the UVTA, the fraudulent transfer cause of action appears to be based on that statute, as the Lucketts argue on appeal that they have standing under the UVTA, and they allege in the fraudulent transfer cause of action that Bank of America acted with an "inten[t] to hinder, delay, and defraud," which is statutory language from the UVTA.  (Civ. Code, § 3439.04, subd. (a)(1) [setting forth the requirement that an actionable fraudulent transfer be made with "actual intent to hinder, delay, or defraud any creditor"].)

22

value in exchange for the transfer . . . ." (Civ. Code, § 3439.04, subd. (a)(1), (2); *Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118, 122-123.) The UVTA "sets forth creditors' remedies, which include avoidance of a transfer, attachment, and the equitable remedies of injunction and receivership as well as '[a]ny other relief the circumstances may require.' ([Civ. Code, ]§ 3439.07, subd. (a)(3)(C).)" (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 830.)

Here, we closely examine the terms of the UVTA to determine whether the Lucketts have stated a cause of action under that statute. Under the UVTA, " '[a] fraudulent conveyance is a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor *from reaching that interest to satisfy its claim*.' " *Kirkeby v. Superior Court* (2004) 33 Cal.4th 642, 648, italics added.) The UVTA defines a " '[c]reditor' " as "a person that has a *claim*." (Civ. Code, § 3439.01, subd. (c), italics added.) A " '[c]laim' " under the UVTA is defined as "*a right to payment*, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." (Civ. Code, § 3439.01, subd. (b), italics added.)

Here, because the Lucketts' fraudulent transfer claim is not based on an allegation that Bank of America is attempting avoid *a right to payment*, the Lucketts do not allege that Bank of America is attempting to hinder their right to collect on a *claim* they are asserting as *creditors* of Bank of America, as required by the UVTA. Instead, the Lucketts allege that Bank of America is attempting to frustrate their requested remedy of

23

an order requiring Bank of America to provide the Lucketts with a loan modification.[11]

As a claim by the Lucketts that they are entitled to an order from the court requiring Bank of America to provide a loan modification does not make the Lucketts *creditors* with a claim for *payment* against Bank of America, the UVTA does not apply here. Accordingly, the fraudulent transfer claim is without merit.

2.  *SPS's Demurrer to the Fraudulent Transfer Cause of Action*

The Lucketts' claim for fraudulent transfer against SPS relies on allegations that SPS knew that Bank of America was transferring the servicing of the loan in order to avoid a loan modification, and thus SPS should be included in the remedy that the Lucketts seek, i.e., an order requiring modification of the Lucketts' loan.

The fraudulent transfer claim against SPS fails for the same reason that the claim for fraudulent transfer fails against Bank of America, namely the Lucketts are not

---

[11]    We observe that the Lucketts could become judgment creditors of Bank of America were they to prevail on a claim for damages under their fraud cause of action. Indeed, the pendency of that claim for damages makes the Lucketts "creditors" for purpose of the UVTA.  (See *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1057-1058 [" 'It is well settled in this state that the relationship of debtor and creditor arises in tort cases the moment the cause of action accrues[,]' " and " ' "[o]ne having a claim for a tort is a creditor before the commencement of an action thereon, as well as after, and as such creditor, is, upon recovering judgment, entitled to avoid a fraudulent transfer antedating the commencement of his action." ' "].)  However, the Lucketts' status as potential judgment creditors does not advance their claim under the UVTA, as they do not allege that Bank of America transferred the servicing of their loan to SPS to avoid the *payment* of any eventual *judgment*.  Indeed, it would be absurd for the Lucketts to make such an allegation in light of Bank of America's continuing status as a major financial institution. Even with the transfer of the servicing of the Lucketts' loan, Bank of America remains an entity with significant assets available to satisfy its debts to its judgment creditors, including any debt that might arise as to the Lucketts.

24

creditors with a claim for payment against Bank of America, and accordingly the UVTA does not apply.

E.    *Proposed Amendment to Add a Cause of Action Under Business and Professions Code Section 17200 et seq.*

The Lucketts argue that in the event we conclude that the demurrer was properly sustained as to the current causes of action in the first amended complaint, we should give them leave to amend their pleadings to include a cause of action under California's unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL).  The Lucketts did not make this request in the trial court, and they assert their proposed UCL cause of action for the first time in their appellate briefing.

As an initial matter we consider and reject SPS and Bank of America's argument that it is improper for the Lucketts to propose an amended cause of action for the first time in the appellate court.  "[I]t is an abuse of discretion to sustain demurrers without leave to amend if there is a reasonable possibility that the plaintiff can amend the complaint to cure its defects.  [Citations.]  To meet the plaintiff's burden of showing abuse of discretion, the plaintiff must show how the complaint can be amended to state a cause of action.  [Citations.]  However, such a showing need not be made in the trial court so long as it is made to the reviewing court."  (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386.)  Therefore, in determining whether the trial court abused its discretion in denying leave to amend, we consider whether the Lucketts have met their burden of showing that they can state a cause of

25

action for violation of the UCL, based on the Lucketts' description of that proposed cause of action in their appellate briefing.

"The UCL prohibits, and provides civil remedies for, unfair competition, which it defines as 'any unlawful, unfair or fraudulent business act or practice.'  ([Bus. & Prof. Code, ]§ 17200.)  Its purpose 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' "  (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320 (*Kwikset*).)  " ' " 'Because [Business and Professions Code] section 17200 is written in the disjunctive, it establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' " ' "  (*Cansino*, *supra*, 224 Cal.App.4th at p. 1473.)

Although the Lucketts are vague about what they would allege in a UCL cause of action, the proposed UCL cause of action appears to be wholly derivative of the Lucketts' fraud claim against Bank of America.  Specifically, the Lucketts explain that they propose to "allege that Bank of America's representations were unfair and fraudulent in that they misled [the Lucketts] into missing their mortgage payments, falling behind, telling them that they would qualify when they knew that they ultimately would not, and then denied them a loan modification."[12]

---

[12]     The Lucketts also briefly attempt to tie the proposed UCL cause of action to the fraudulent transfer cause of action, stating that they "can allege that the manner the transfer was established was misleading and disadvantageous" to them.  This vague statement about what they "can allege," without setting forth the actual proposed

When a UCL cause of action is wholly derivative of a fraud cause of action, the failure of that fraud cause of action on the ground that it is not pled with specificity supports the conclusion that the UCL cause of action is also insufficiently pleaded. (*Cansino*, *supra*, 24 Cal.App.4th at p. 1474 [sustaining demurrer to UCL claim based on the same alleged misrepresentations as the fraud cause of action, because "this allegation fails to state a claim for relief due to lack of specificity, in the same way plaintiffs' fraud claim based on the same misrepresentations is deficient"].) Further, "[a] plaintiff alleging unfair business practices [under the UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619; cf. *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795 ["statutory causes of action must be pleaded with particularity"].) Because the UCL claim is derivative of the fraud claim, which is too vaguely pleaded to state a cause of action, we conclude that the proposed UCL claim lacks merit for the same reason that we have explained for the fraud cause of action.[13]

---

allegations, is not sufficient to met the Lucketts' burden to show how they would amend their complaint to state a claim under the UCL.

[13] In addition, the Lucketts are required to set forth their proposed UCL cause of action with specificity because the Lucketts have the burden to establish that they should have been permitted to amend their complaint. To meet their burden, the Lucketts "must set forth factual allegations that sufficiently state all required elements of that cause of action. [Citations.] Allegations must be factual and specific, not vague or conclusionary." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43-44.) The Lucketts have failed to meet this requirement for the proposed UCL cause of action for the same reason they failed to meet the pleading requirements for their fraud cause of action.

27

Moreover, the proposed UCL cause of action fails because a private person has standing to bring an action under the UCL only if that person "has suffered injury in fact and has lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) " 'A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition.' " (*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373, 1382.) "The plain import of this is that a plaintiff now must demonstrate some form of economic injury." (*Kwikset*, *supra*, 51 Cal.4th at p. 323.) "[P]roof of lost money or property will largely overlap with proof of injury in fact." (*Id*. at p. 325.)

Here, the Lucketts' proposed UCL cause of action would not properly allege that the Lucketts have "lost money or property as a result of the unfair competition." (Bus. & Prof. Code, § 17204.) As we have explained in connection with our discussion of the Lucketts' failure to plead the out-of-pocket damages necessary to state a claim for fraud, the Lucketts have not identified any lost money or property. As in the fraud cause of action, the Lucketts propose to allege in the UCL cause of action that they are facing foreclosure, that their credit has deteriorated and that they have incurred late fees and penalties. However, the Lucketts cannot allege that any of these negative consequences have actually caused them to lose money or property. The foreclosure is a future possibility; the Lucketts have not identified any concrete monetary consequences of their deteriorated credit rating; and the Lucketts have not alleged that they have actually *paid* any late fees or penalties or that they ever plan to do so as part of any possible plan to cure their default.

28

As the Lucketts' proposed UCL cause of action lacks merit, we conclude the Lucketts have not established that the trial court abused its discretion in denying leave to amend when sustaining the demurrers.[14]

## DISPOSITION

The judgments are affirmed.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

NARES, J.

---

[14] The Lucketts also contend that they can make certain amendments to their complaint to cure the pleading deficiencies in the causes of action alleged in their first amended complaint. As relevant, we have addressed and rejected these proposed amendments in the course of our discussion of the various causes of action, explaining that they would not cure the pleading deficiencies we have identified for those causes of action. On that basis, we conclude that the trial court did not abuse its discretion in denying leave to amend.

The Lucketts also argue that the trial court's ruling denying them leave to amend was "a violation of . . . public policy." Although the argument is not well developed, it assumes that the trial court denied leave to amend solely because it wanted to quickly dispose of this case and clear its busy docket. We find no support in the record for that characterization of the trial court's motivation for denying leave to amend. As we have explained, the trial court was well within its discretion to deny leave to amend because the Lucketts have not identified amendments that would state a claim against Bank of America or SPS.