Filed 12/15/21 Nalbandian v. The Camden Development CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| GREGORY NALBANDIAN, Plaintiff and Appellant, v. THE CAMDEN DEVELOPMENT, INC., Defendant and Respondent. | B303861 (Los Angeles County Super. Ct. No. BC719595) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Anthony J. Mohr, Judge. Affirmed.

Law Office of Martin Stanley and Martin Louis Stanley for Plaintiff and Appellant.

Shaw Koepke & Satter, John W. Shaw, Lisa A. Satter, and Julie A. Mullane, for Defendant and Respondent.

Plaintiff and appellant Gregory Nalbandian (Nalbandian) had five opportunities to file a complaint against defendant and respondent The Camden Development (Camden) that did not suffer from uncertainty and stated a valid cause of action. The last iteration of the pleading, the operative fourth amended complaint, was styled in the form of a memorandum of points and authorities and did not identify the parties or the pertinent factual allegations. Instead, it included sections labeled "INTRODUCTION," "STATUTORY AUTHORITY," "DEFENDANT'S DEFENSE HOLDS NO WEIGHT," "DEFENDANT CREATING C[A]NCELLED DEPOSITIONS & APPOINTMENTS," and "CONCLUSION." The trial court sustained Camden's demurrer to the operative complaint—which Nalbandian did not oppose—and dismissed the case. Nalbandian now seeks reversal, however, and we consider whether the operative complaint can stand as is and whether Nalbandian has shown how any defects could be fixed by amendment.

I

A

Nalbandian (representing himself) originally sued Camden in August 2018. What followed over the course of the next year were sustained demurrers and motions to strike by Camden and requests to further amend from Nalbandian—or sometimes just the filing of a new amended pleading without such a request. We need not recount the procedural particulars. Suffice it to say that by August 2019, Nalbandian had already filed four complaints and then submitted a fifth, the operative fourth amended complaint.

The operative complaint is an unusual document. It is captioned "UNLIMITED CIVIL LAW SUIT CASE FOURTH AMENDED COMPLAINT RE: BREACH OF CONTRACT, PROPERTY DAMAGE, PERSONAL INJURY, GRAND THEFT, UNLAWFUL EVICTION, EMOTIONAL DISTRESS, INTENTIONAL NEGLIGENCE & MENTAL ANGUISH." The caption is followed by text summarizing a prior hearing on Nalbandian's third amended complaint, including an apparent suggestion by the court that Nalbandian obtain legal counsel, and Nalbandian's assertions that Camden "has not honored any of the [c]ourt's requests" at the prior hearing.

Immediately following all this is a "MEMORANDUM OF POINTS AND AUTHORITIES" heading. What appear to be the most pertinent portions of the "INTRODUCTION" that immediately ensues are the following. Nalbandian signed a lease agreement in 2016 that was to remain in effect until 2018 but "was inadvertently terminated without warning" in 2017 and "led to the grand theft to all of [his] personal, professional & intellectual property, ultimately leaving [Nalbandian] homeless, restricted from his residence for the remaining four (4) months stipulated on the signed *breached* lease agreement, and inevitably to the end of his marriage." "[F]ive (5) weeks prior to the *Breached Lease[ ] Agreement/Unlawful Eviction* that took place . . . AMANDA MARIE VEGA, a high-ranking employee to [Camden's] leasing department, reversed her vehicle, under intoxication, into [Nalbandian's] vehicle, th[e]n attempted to flee the scene." "Approximately five (5) weeks after the *HIT & RUN INCIDENT*, [Camden], without warning or notification, deactivated [Nalbandian's] key, which was [Nalbandian's] only way of entry into his premises. Attached as Exhibit D is the

3

breached agreement, which left [Nalbandian] homeless, stuck in mental anguish with emotional distress. [¶] [Camden's] justification for the unlawful detainer was based on a rejected TRO created by [Nalbandian's] ex-wife. Preferential treatment was given to [Nalbandian's] ex-wife . . . ."

Following this introductory section is a section quoting or citing sundry statutory provisions: Civil Code sections 789.3, subdivision (b)(1) (governing landlord termination of occupancy), 1940.2, subdivision (a) (unlawful acts by a landlord), and 3300 (measure of contract breach damages); Penal Code sections 487 (grand theft), 240 (illegal attempts), 245, subdivision (a)(1) (assault with a deadly weapon), 594 (vandalism), 135 (destruction of evidence); and Vehicle Code sections 23152, subdivision (a) (driving under the influence) and 20002 (hit and run).

Coming after these citations is a section on Camden's "DEFENSE," which, in pertinent part (as best as can be divined) states: "[Camden] alleges [Nalbandian's] rights are forfeit due to the allegations made against [Nalbandian's] marriage, when the allegations made against [Nalbandian] were made forfeit from the law. Attached on previous Complaints from [Nalbandian] are denied TRO's filed by [Nalbandian's] wife, used as a means to unlawfully terminate the residency of [Nalbandian]. No judge ordered [Nalbandian] to be removed from his premises. . . . [¶] After five (5) months from restricting [Nalbandian] from entering his premises, [Camden] returned only HALF of the down deposit back to [Nalbandian], when ALL of the down deposit was paid by [Nalbandian], and deductions incurred were not of [Nalbandian's] responsibility when a BOOT-LOCK prevented [Nalbandian] to enter his premises during the final five (5) months of his residency there. . . . If [Camden] insisted on an unlawful eviction

4

based on a restraining order, why insist on putting both names on the returned check knowing the hostile separation they caused?"

The ensuing section of the operative pleading complains Camden has not yet deposed Nalbandian. It further asserts that "[Camden's] continuous approach to strike [Nalbandian's] Complaint and every Amendment thereafter[ ] goes to show the guilt behind the crimes, if the Complaint were to ever take trial." It closes with a series of rhetorical questions, including, "If Amanda Marie Vega, an employee of [Camden] didn't cause intoxicated hit and run damages (both vehicular and physical) against [Nalbandian] then who did?"

The final "CONCLUSION" section of the operative complaint prays for "$500,00.00 [sic] for damages incurred under all the categories of Personal Injury, Property Damage, Breach of Contract, Unlawful Eviction, Grand Theft, Intentional Negligence, Mental Anguish & Emotional Distress." The complaint explains "$3,500,000.000 [sic] was [initially] requested for damages incurred because of intellectual property that had been stolen during the timeframe of the *Breach of Contract/Unlawful Eviction*, which valued at that estimation. However, that intellectual property has been returned since January of 2019 and $3,000,000.00 has been deduc[t]ed from the overall requested compensation . . . ."

B

Camden demurred to the operative complaint, arguing it was uncertain and failed to state a cause of action; Camden also sought, in the alternative, an order striking the operative complaint. As to the former ground for demurrer, Camden

5

emphasized the operative complaint did not comply with Rule 2.112 of the California Rules of Court and was a self-styled memorandum of points and authorities "containing argument[ ] in lieu of causes of action with supporting facts." Camden's demurrer also attempted to discern possible causes of action the operative complaint might assert and discussed reasons why breach of contract, unlawful eviction, and negligence theories of liability would fail.

So far as the appellate record reveals, Nalbandian filed no opposition to Camden's demurrer. The trial court held an unreported hearing to decide it, and the only record we have of what transpired is a four-sentence minute order: "Matter is called for hearing. [¶] Counsel for plaintiff present has a substitution of attorney form, but it is not yet filed. [¶] After argument, The Demurrer – with Motion to Strike (CCP 430.10) filed by [Camden] on 10/24/2018 is Sustained without Leave to Amend. [¶] [Camden] to prepare and file the order and give notice." The trial court later entered a judgment of dismissal.

II

Nalbandian spends almost the entirety of his appellate briefing mounting an unpersuasive defense of the operative complaint as written. As drafted, it is an uncertain airing of grievances and it fails for that reason. While a plaintiff can show for the first time on appeal how a defective complaint can be fixed by amendment, Nalbandian does next to nothing in that respect—offering only passing, nonspecific assurances that the document can be "clarified and tightened." That is insufficient, and we shall accordingly affirm the judgment of dismissal.

A

The Code of Civil Procedure permits a defendant to demur to a complaint on the ground that it is uncertain, a term that includes pleadings that are "ambiguous and unintelligible." (Code Civ. Proc., § 430.10; see also Code Civ. Proc., § 425.10, subd. (a)(1) [a complaint must include a "statement of the facts constituting the cause of action, in ordinary and concise language"].)  Demurrers for uncertainty are generally disfavored (*Chen v. Berenjian* (2019) 33 Cal.App.5th 811, 822) because "under our liberal pleading rules, *where the complaint contains substantive factual allegations sufficiently apprising defendant of the issues it is being asked to meet*, a demurrer for uncertainty should be overruled or plaintiff given leave to amend" (*Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 139, fn. 2, italics added).  Courts are accordingly obligated to look past the form of a pleading to its substance.  (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908.)

We look past the unusual format of the operative complaint here and still see an uncertainty problem—one of ambiguity.  The operative complaint does not identify factual allegations and correlate such allegations to a legal theory of liability.  It is not enough for a pleading to set out a disjointed narrative of events divorced from grounds for liability and hope the court or opposing party will do the work of connecting the dots (if there are dots) between the two.  It was therefore proper for the trial court to sustain the demurrer on uncertainty grounds, and with Nalbandian already having had five opportunities to craft an adequate pleading and having failed to oppose the demurrer to the operative complaint, to do so without again giving Nalbandian another opportunity to attempt to remedy the

7

problem. (*Ruinello v. Murray* (1951) 36 Cal.2d 687, 690 ["Although the deficiencies in plaintiff's complaints were raised in defendant's demurrers, after three attempts he has not overcome them. The trial court could reasonably conclude that he was unable to do so, and accordingly, it did not abuse its discretion in sustaining the demurrer to the third amended complaint without leave to amend"]; *Johnson v. Ehrgott* (1934) 1 Cal.2d 136, 138 ["[T]here must be a limit to the number of amended complaints"].)

### B

There is authority that a plaintiff who suffers dismissal after a demurrer is sustained without leave to amend may make a showing of how the pleading may be cured by amendment for the first time on appeal. (See, e.g., *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468.) This is done by submitting a proposed amended complaint or enumerating the facts and demonstrating how those facts establish a cause of action. (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 890.)

Nalbandian, in his opening brief, states the following regarding the prospect of amendment: "Neither [Camden] nor the trial court even attempted to address whether the amended allegations, taken as true, state valid causes of action. While [Nalbandian] maintains that they are for the reasons set forth above, [Nalbandian] will move to move [sic] the Complaint to provide still further clarity." Nalbandian's reply brief says little more on the subject: "Since the appearance of co[u]nsel during this appeal, [Camden] ha[s] been required to restructure [its] arguments, and even abandoned their lead argument in this appeal—CRC 2.111—after it was addressed by [Nalbandian's]

8

counsel in the [o]pening brief.  While [Nalbandian] continues to maintain that the elements of valid claims are contained in the [operative complaint], to the extent the complaint can be clarified and tightened, [Nalbandian's] counsel stands ready to do that."

This is not enough to merit reversal for erroneous denial of leave to amend.  At most, Nalbandian's appellate briefing is a non-specific promise of a willingness to undertake further work to amend the operative complaint, not a *showing* of how it would be amended to resolve its ambiguity.  After five prior iterations of the complaint and a failure to oppose Camden's demurrer in the trial court, that is too little too late.

## DISPOSITION

The judgment of dismissal is affirmed.  Camden is awarded costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, Acting P. J.

We concur:

MOOR, J.

KIM, J.

9