Filed 9/12/24  Virgin Hotels San Francisco v. 250 Fourth Development CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VIRGIN HOTELS SAN FRANCISCO, LLC,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>250 FOURTH DEVELOPMENT, L.P.,<br><br>        Defendant, Cross-complainant and Appellant. | A166855<br><br>(City & County of San Francisco Super. Ct. No. CGC20584350) |

In 2013, Virgin Hotels San Francisco, LLC (Virgin) and 250 Fourth Development, L.P. (Owner) entered into two agreements governing the construction and management of Owner's hotel (Hotel) in downtown San Francisco.  In April 2020, Owner terminated the relationship and litigation ensued.  After a 13-day bench trial, the trial court found Owner breached the parties' management agreement, and it denied Owner's motion for a new trial.  Owner appeals, and we affirm.

## BACKGROUND

In 2010, Ganendra Singh — Owner's principal shareholder — heard Richard Branson — the Virgin Group's founder — say in a speech at a conference that he planned to open 20 hotels in the next two years.  Singh and Raul Leal — Virgin's CEO — discussed Virgin's interest in managing the

1

Hotel. Leal told Singh that Virgin's hotels would have cross-marketing opportunities with Virgin Airlines. Owner and Virgin negotiated two contracts over 10 months. The first, a "Technical Services and Pre-Opening Services Agreement" (TSA), governed their relationship before the Hotel opened. The second, a "Hotel Management Agreement" (HMA), governed day-to-day operations afterwards.

The TSA entrusted Owner with the Hotel's "design, development and construction" in "accordance" with Virgin's brand standards, and it required Virgin to provide Owner with "Technical Services necessary or reasonably required" for Owner to meet the standards. Virgin also had to provide "Pre-Opening Services" — including staffing and marketing of the Hotel — starting nine months before opening.

In the HMA, Virgin agreed to manage the Hotel for 20 years in exchange for a management fee. It had "discretion and control" of "all matters relating to the management, operation, supervision, and marketing of the Hotel and its employees," and it promised to use "reasonable best efforts" to maximize profit subject to brand standards. The parties anticipated the Hotel entering "cross-marketing relationships with its Virgin-branded affiliates (e.g., Virgin America)." The HMA mandated waivers be "expressed in writing and signed" and that no waiver "be construed" as a future waiver. And it limited termination rights. Section 2.02 allowed Owner to terminate if Virgin failed to meet specified financial benchmarks but not until three years after opening. Sections 9.01 and 9.02 allowed either party to terminate if the other failed "to perform, keep or fulfill any of the other covenants, undertakings, obligations or conditions" in the HMA. To do so, a party had to serve a "written notice" identifying the failure and demanding its cure within 30 days. If uncured, the default became an "Event

2

of Default," and the nondefaulting party could terminate in writing, taking effect 90 days later.

Both agreements allowed Virgin to terminate if Owner did not open the Hotel by July 2016. Owner failed to meet the deadline and kept changing opening dates. Rather than terminate, Virgin extended the deadline four times in writing. Lacking a set opening date, Virgin could not market or staff the Hotel. Leal told Singh the changing dates meant the Hotel would open with very little business, affecting its ramp up, and Singh understood.

In February 2019, Owner opened the Hotel, but it was chaos. There was "construction everywhere"; only 40 of 194 rooms were available; public areas didn't have furniture; employee cafeteria and offices were incomplete; the rooftop bar was closed; and the restaurant was only partially open. Nonetheless, Virgin's employees were there for weeks helping Owner. Several months later, the Hotel held its grand opening and business improved. Industry publications applauded it. Although Singh worried employees were unionizing, the Hotel "scal[ed] up nicely in the market," "had room to grow," and could "continue to be profitable." Despite the rocky start, Virgin expected the Hotel to stabilize in its third year.

But Singh terminated the HMA in April 2020. He called Leal, asked him to " 'take off your CEO hat,' " " 'be my friend,' " and " 'let us out.' " He said, " 'I'm not happy with the situation with the union. I don't think we are going to make any money in this environment. No one knows what's going on with COVID. And again, as a friend, I would like you to let me and my family out of this agreement.' " Singh said he'd hire a "well-heeled attorney" and e-mailed a termination letter. Virgin noted the HMA did not expire until 2039, and Owner never "alleged an Event of Default or other basis to terminate." In response, Owner wrote Virgin "agreed in oral and written

3

communications that Owner had the right to terminate the HMA without incurring any termination fee," which Virgin denied.

In May 2020, Virgin filed a complaint seeking specific performance or expectancy damages. Owner denied Virgin's allegations and filed a cross-complaint. Owner later filed an amended complaint alleging fraud, and breach of contract, fiduciary duty, and the covenant of good faith. Virgin denied the allegations and filed its own amended complaint, alleging Owner breached the HMA. Owner asserted 44 affirmative defenses — including fraud and waiver.

In April and May 2022, the trial court held a 13-day bench trial, hearing expert testimony from both sides. In July, it issued its tentative decision, finding Owner's termination breached the HMA's exit terms while Virgin performed its material obligations. The court also concluded Owner didn't prove its own claims and defenses, rejecting the testimony of its experts. As to fraud, the court found Virgin's statements "regarding the success of the Virgin Hotels' business, cross-marketing and the profitability of the Hotel were predictions and hoped-for outcomes," and Owner provided "zero evidence that Virgin's statements" were knowingly false or without reasonable grounds to believe true. The court also found no evidence of a relevant waiver, that Virgin adhered to its fiduciary duties, and Owner didn't have a noncontractual termination right immunizing it from damages.

Owner filed 43 objections. After a "fresh look," the trial court reached the same conclusions but clarified it rejected Owner's expert testimony as "divorced from the language of the relevant contracts." The court awarded Virgin $9.7 million for the management fees it expected and denied Owner's motion for a new trial. (Code Civ. Proc., § 657; hereafter, § 657.)

4

## DISCUSSION

Owner challenges various aspects of the trial court's statement of decision and its denial of a new trial motion. We address the arguments in turn.

### I.

First, Owner argues agency law affords it — as owner/principal — an unconditional power to terminate the HMA, and the contract's exit terms cannot limit that power. Not so. A " ' "principal has the power to revoke an agent's authority at any time before the agent has completed performance." ' " (*Woolley v. Embassy Suites, Inc.* (1991) 227 Cal.App.3d 1520, 1529 (*Woolley*), italics omitted.) The principal's power to revoke "applies even if doing so is a violation of the contract," and the court cannot compel a principal to remain in a contract through *equitable relief*. (*Id.* at p. 1530.) But where a principal terminates an agency contract before complying with its exit terms, "the agent's remedy for wrongful termination is damages, as in any other breach of contract action." (*Ibid*.)

Clearly, a principal exercising its termination power can breach a contract's exit terms. (*Woolley*, *supra*, 227 Cal.App.3d at p. 1530.) In arguing to the contrary, Owner cherry-picks language in *Woolley* and relies on *Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.* (1993) 19 Cal.App.4th 615, but those cases limit *equitable* relief for contract breaches. (*Woolley*, at pp. 1529–1530; *Pacific Landmark*, at p. 618.) In *Woolley,* the trial court enjoined hotel owners from terminating a hotel management agreement before complying with its exit terms. (*Woolley*, at p. 1525.) The appellate court reversed the injunction but explicitly stated the "owner risks exposure to a substantial damage award" for not complying with the terms. (*Id.* at p. 1530.) In *Pacific Landmark*, the appellate court reversed an order preventing a hotel owner

5

from terminating a management contract but explained "damages may be in order" if termination is "contractually unjustified." (*Id.* at pp. 618–619, 626.)

Second, Owner contends Virgin breached the TSA, the HMA, its fiduciary duties, and the implied covenant of good faith, and Owner thus properly terminated the HMA.[1]  It contends its experts provided unrebutted evidence proving Virgin breached its obligations, and the court erred in rejecting their testimony.  We disagree.

We set forth the following additional background: Owner called two experts to prove Virgin's breach — Fred Kleisner and Wayne Goldberg. The trial court found their testimony "lacked probative value," concluding "expert testimony about better ways to manage a hotel, divorced from the particulars and peculiarities of this Hotel" do not show Virgin's "non-performance."  The court also found Owner did not prove its fiduciary claims and rejected its good faith arguments.

"A party alleging breach of contract must establish the existence of a contract, his or her own performance, the other party's breach, and damages suffered by the complaining party." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 464.)  We review the trial court's findings concerning a breach for substantial evidence. (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 984–985.)  Expert testimony "may be rejected by the trier of fact, so long as the rejection is not arbitrary." (*Conservatorship of McKeown* (1994) 25 Cal.App.4th 502, 509.)

---

[1] Owner repeatedly makes legal and factual assertions without citing authority or the record, and rarely ties asserted facts to legal theories. (Cal. Rules of Court, rule 8.204(a)(1)(B), (C); undesignated rule references are to these rules.)  We will not search the record for supporting facts or make arguments for a party, and we treat unsupported arguments as waived. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 (*L.O.*).)

The trial court reasonably rejected the experts' testimony. (*People v. Mickle* (1991) 54 Cal.3d 140, 185 [expert testimony properly rejected where probative value low].) Kleisner criticized the parties' marketing fees and Virgin's changing brand standards during construction. But in section 3.01 of the HMA, the parties agreed to the fee structure. And in exhibit C to the TSA, the parties agreed "Virgin shall control all decisions relating to" brand standards; in section 3 they agreed Owner must build the Hotel according to those standards. Kleisner ignored these provisions. And while he testified to the importance of providing accurate financial statements and communication between owners and managers, he provided no opinion on the parties' financial statements and communications. For his part, Goldberg managed economy and long-term stay hotels, not lifestyle hotels. The court could reject the experts' opinions — even if unrebutted — on these bases. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 632.)

Moreover, the trial court properly rejected Owner's good faith contentions. (*Levy v. Only Cremations for Pets, Inc.* (2020) 57 Cal.App.5th 203, 215 [covenant of good faith claim may be disregarded if based on same facts as breach of contract claim].) And Owner has waived its fiduciary duty claim on appeal by failing to specify which fiduciary duties Virgin allegedly breached, what those duties require, or how Virgin's actions breached them. (*Daly v. Yessne* (2005) 131 Cal.App.4th 52, 64 [party alleging breach of fiduciary duty must prove fiduciary relationship, its breach, and damage proximately caused by it]; *L.O., supra*, 96 Cal.App.5th at p. 620.)

Third, Owner contends Virgin fraudulently misrepresented the power of its brand. Owner points to Branson's 2010 statement that Virgin planned to open 20 to 25 hotels in two years and Leal's statements about cross-marketing opportunities with Virgin America. We are unpersuaded.

7

The elements of fraud are: (1) a misrepresentation, i.e., false representation, concealment, or nondisclosure; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 974.) Actionable misrepresentations "must pertain to past or existing material facts." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469.) "Statements or predictions regarding future events are deemed to be mere opinions which are not actionable." (*Ibid.*) Actual knowledge of falsity may be proven by direct evidence or inferred from circumstances, but in the latter instance, the circumstances must show " 'the defendant "must have known" and not "should have known." ' " (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 163.)

The statements Owner identified are hoped-for predictions and thus nonactionable. (*Cansino v. Bank of America*, *supra*, 224 Cal.App.4th at p. 1469.) Branson's public statements concerned Virgin's desire to open future hotels; Leal's statements concerned potential cross-marketing opportunities once the hotels and airline both existed. (*Id.* at p. 1470 [future market predictions are not actionable misrepresentations].) Moreover, Owner identifies no evidence indicating Virgin "must have known" these statements were false or that it intended to defraud. (*RSB Vineyards, LLC v. Orsi* (2017) 15 Cal.App.5th 1089, 1098 [at least "some evidence" defendants had reason to know required].)

To avoid these deficiencies, Owner argues Virgin had superior knowledge, and it asserts theories of constructive fraud and fraudulent concealment. But the doctrine of superior knowledge applies to opinions — not predictions about future events — and constructive fraud applies only to fiduciary or confidential breaches. (*Cansino v. Bank of America*, *supra*,

224 Cal.App.4th at p. 1470; *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 562.) Neither apply here. Lastly, Owner did not plead fraudulent concealment in its first amended complaint and cannot raise it now. (*Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1409.)

Fourth, Owner contends Singh's text messages to Leal complaining about the Hotel's performance and his e-mails discussing its 2020 budget provided proper notice of default. Not so.

The trial court found these communications did not " 'fairly communicate' to Virgin that its performance constituted" default. Substantial evidence supports the finding. (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at p. 985.) Section 9.01 of the HMA required Owner to serve a "written notice" of default demanding cure in at least 30 days. Singh's text messages and e-mails never use the word "default" — much less identify a default and demand cure. At most, the messages express concern over the Hotel's performance and propose changes to cut expenses. Moreover, Singh makes clear he was "reserving . . . judgment" and not changing brands.

Finally, Owner argues Virgin waived its right to damages because it waived the TSA's and HMA's July 2016 deadline to open the Hotel and because Leal agreed Owner could "terminate the Virgin relationship without penalty." The HMA precludes this argument.

"Waiver is the intentional relinquishment of a known right after knowledge of the facts. [Citations.] Ordinarily it is a question for the trier of fact." (*Gill v. Rich* (2005) 128 Cal.App.4th 1254, 1264, fn.10.) The party claiming waiver must " ' "prove it by clear and convincing evidence that does not leave the matter to speculation, and 'doubtful cases will be decided against a waiver.' " ' " (*Stephens & Stephens XII, LLC v. Fireman's Fund Ins.*

9

*Co.* (2014) 231 Cal.App.4th 1131, 1148.) We "review a trial court's findings regarding waiver to determine whether [they are] supported by substantial evidence." (*Engalla v. Permanente Medical Group, Inc.*, *supra*, 15 Cal.4th at p. 983.)

The trial court found Virgin never waived its right to damages. Ample evidence supports its finding. (*In re I.J.* (2013) 56 Cal.4th 766, 773 [substantial evidence if finding supported by sufficient facts].) Section 11.12 of the HMA provides no waiver of any term is valid unless "expressed in writing and signed by such party" — no written damage waiver appears in the record. Additionally, the section states any waiver "shall not be construed" as a future waiver.

In sum, Owner's various claims about the trial court's statement of decision fail to identify a basis to reverse.

II.

Owner contends the trial court erred in denying the motion for a new trial. (§ 657.) We disagree.

We set forth the following additional background: Owner had the right to terminate the HMA if Virgin failed to meet one of two financial benchmarks for two consecutive years after three years of operation. The first benchmark required the Hotel's operating profit to reach 95 percent of its projection. The second benchmark required a yearly net operating income of at least $6 million. At trial, Owner's damages expert — Greg Regan — opined Virgin could not meet the second benchmark in future years, but agreed Virgin exceeded it in its first year. Given Virgin's first-year success — and the HMA contemplating a three-year ramp up — the trial court found Virgin was likely to meet the benchmark for the HMA's remaining 19 years. It noted Virgin performed despite Owner's belief it could

10

do even better. Using Regan's calculations, the court awarded Virgin $9.7 million.

After entry of judgment, Owner moved for a new trial on the grounds of newly discovered evidence, surprise, irregularities in the proceedings and abuse of discretion, excessive damages, and legal error. (§ 657, subds. (1), (3), (4), (5) and (7).) For new evidence, Owner produced an agreement between Virgin and a third party allowing Virgin to use the third party's marketing, sales, and reservation services (the new agreement). Owner argued the new agreement showed the Virgin brand failed, rendering it unable to perform its HMA duties. The trial court denied the motion, finding the new agreement *increased* Virgin's ability to generate room reservations and meet its financial benchmarks. It also found the damages award wasn't excessive or speculative and dismissed Owner's remaining arguments.

Owner first contends the trial court abused its discretion because the new agreement was material to the damages calculation and liability determination. We disagree. The authority of a trial court to grant a new trial "is established and circumscribed by statute." (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633.) Section 657 provides seven grounds: (1) " 'Irregularity in the proceedings'; (2) 'Misconduct of the jury'; (3) 'Accident or surprise'; (4) 'Newly discovered evidence'; (5) 'Excessive or inadequate damages'; (6) 'Insufficiency of the evidence'; and (7) 'Error in law.' " (*Ibid.*)

New trials "for newly discovered evidence are disfavored." (*Missionary Guadalupanas of Holy Spirit Inc. v. Rouillard* (2019) 38 Cal.App.5th 421, 438.) A moving party must show: "(1) the evidence is newly discovered, (2) it could not with reasonable diligence have been discovered and produced earlier, and (3) the evidence is material." (*Ibid.*) "Evidence is material if it is

11

likely to have produced a different result." (*Ibid.*)  Evidence materiality is left "to the sole discretion of the trial court, and will not be disturbed absent a manifest showing of abuse of discretion." (*Ibid.*)  " 'An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.' " (*Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1415–1416.)  The appellant bears the burden of *affirmatively* demonstrating both error and prejudice arising from such error.  (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.)

The trial court reasonably found the new evidence to be immaterial. (*Rayii v. Gatica, supra,* 218 Cal.App.4th at pp. 1415–1416.)  The new agreement — when coupled with Virgin's first-year success — made Virgin *more* likely to meet the second benchmark, thereby limiting Owner's termination rights.  As for liability, Owner does not identify any provision of either contract the new agreement allegedly breaches.  (*L.O., supra,* 96 Cal.App.5th at p. 620 [we will not make arguments for a party].)

Owner next contends the trial court abused its discretion in denying it a new trial for excessive damages.  Not so.  When a motion for new trial is based on excessive damages, "the trial court is restricted to the evidence presented at trial." (*Stevens v. Owens-Corning Fiberglas Corp.* (1996) 49 Cal.App.4th 1645, 1660–1661.)  A new trial may not be granted for excessive damages " 'unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision.' " (*Ibid.*)  "The amount of damages to be awarded is a question of fact committed, first to the discretion of the trier of fact, and then to the discretion of the trial court on a motion for new trial." (*Fernandez v. Jimenez*

12

(2019) 40 Cal.App.5th 482, 490.)  When the court gives the statement of reasons required by section 657, appellant must demonstrate the court abused its discretion.  (*Oakland Raiders v. National Football League*, *supra*, 41 Cal.4th at p. 636; *Howard v. Thrifty Drug & Discount Stores*, *supra*, 10 Cal.4th at p. 443.)

Owner did not demonstrate the trial court abused its discretion. (*People v. Jordan* (1986) 42 Cal.3d 308, 316 [discretion abused if court ruling is arbitrary, capricious, or patently absurd].)  Owner and Virgin agreed that — when annualized — Virgin met the second benchmark despite a turbulent first year.  Since the HMA contemplated Virgin wouldn't do so for three years, and Owner repeatedly criticized Virgin's performance, the court could reasonably conclude the Hotel would generate more income as it ramped up.

Last, Owner argues the trial court acted as an advocate, erring by denying a new trial for surprise, counsel's misconduct, judicial misconduct, and admitting the testimony of Virgin's damages expert.  (§ 657, subds. (1), (3) & (7).)  We deem these arguments waived due to a failure to properly cite legal authority or the record.  (*L.O.*, *supra*, 96 Cal.App.5th at p. 620.)  Owner also argues the court erred in rejecting its expert Alan Tantleff's testimony but doesn't dispute it only concerned damages if Virgin breached.  Virgin did not breach, so the testimony was irrelevant.

## DISPOSITION

The trial court's judgment and its order denying Owner's motion for a new trial are affirmed.[2]  Virgin shall recover its costs on appeal.  (Rule 8.278(a)(1).)

---

[2] We have considered the remaining arguments in Owner's briefs and have found none that merit further discussion.  Moreover, we did not consider arguments raised for the first time in Owner's reply.  (*Save the Sunset Strip Coalition v. City of West Hollywood* (2001) 87 Cal.App.4th 1172, 1181, fn. 3.)

14

_____
RODRÍGUEZ, J.


WE CONCUR:


_____
SIMONS, Acting P. J.*


_____
PETROU, J.


A166855; *Virgin Hotels San Francisco, LLC v. 250 Fourth Development, L.P.*

---

* Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.